In re Lynn **JEFFRIES** and Arthur Pennington, Relators.

No. 10–98–317–CV.

Court of Appeals of Texas, Waco.

Nov. 13, 1998.

Jose R. Villanueva, Gibson & Associates, Groesbeck, for Relators.

Charles G. Childress, Austin, for Real Party in Interest, Texas Department of Protective and Regulatory Services.

H.D. Black, Jr., Groesbeck, for Respondent.

Before Chief Justice DAVIS, Justice CUMMINGS and Justice VANCE.

## OPINION

DAVIS, Chief Justice.

Relators Lynn Jeffries and Arthur Pennington seek a writ of mandamus against Respondent, the Honorable H.D. Black, Jr., Judge of the 77th Judicial District Court of Limestone County. They seek relief from Respondent's denial of their motion to dismiss a pending suit affecting the parent-child relationship under the provisions of the Uniform Child Custody Jurisdiction Act (the "UCCJA"). *See* TEX. FAM.CODE ANN.

§§ 152.001–152.025 (Vernon 1996 & Supp. 1998). We will deny the petition.

## FACTUAL BACKGROUND[1]

Jeffries married Pennington in Florida on June 1, 1989. She gave birth to their daughter R.P. on December 16. Relators divorced in July 1991, and the divorce court awarded sole custody of R.P. to Jeffries. In April 1994, Jeffries began a relationship with Keith Gregory. In November of that year, they moved to Georgia and established a common-law marriage. They had a daughter in 1995.

In June 1997, Jeffries discovered that Gregory had sexually abused R.P. She kicked him out of the home and reported the matter to the Georgia authorities. Gregory threatened Jeffries and her daughters "with abuse and kidnapping" after learning the matter was being investigated. Jeffries fled with her daughters to Texas. They arrived in Coolidge, Texas on August 7, 1997. Jeffries enrolled R.P. in a Coolidge public school. While Jeffries sought employment, her daughters remained in the care of their paternal grandmother.

R.P. is diabetic. She was taken to a Mexia hospital for a condition related to her diabetes shortly after her arrival in Texas. She was discharged by a physician with further instructions for her care. Within a few days, R.P. was admitted to Scott & White Hospital in Temple for "a severe diabetic reaction [diabetic ketoacidosis]." The matter was referred to the Department of Protective & Regulatory Services ("DPRS") which took custody of R.P.

## PROCEDURAL BACKGROUND

DPRS filed suit on August 15, 1997 seeking termination of Relators' parental rights under chapter 262 of the Family Code. On August 22, the court held a full adversarial hearing and named DPRS as temporary managing conservator of R.P. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 107, 1995 Tex. Gen. Laws 3888, 3928 (amended 1997) (current version at TEX. FAM.CODE ANN. § 262.201(c) (Vernon Supp.1998)); TEX. FAM.

CODE ANN. § 105.001(a)(1) (Vernon 1996). The court held a status hearing thirty days later. *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 263.201, 1995 Tex. Gen. Laws 113, .272 (amended 1997) (current version at TEX. FAM.CODE ANN. § 263.201 (Vernon Supp.1998)). The court appointed an attorney ad litem who appeared at these hearings on R.P.'s behalf. Jeffries appeared at these hearings without counsel. Pennington appeared at the status hearing without counsel. At the conclusion of the status hearing, the court continued DPRS as temporary managing conservator and scheduled a review hearing for February 12, 1998. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 113, 1995 Tex. Gen. Laws 3888, 3929 (amended 1997) (current version at TEX. FAM. CODE ANN. § 263.304 (Vernon Supp.1998)).

Jeffries could not find suitable employment and returned to Florida in January 1998. During the review hearing in February, the court appointed counsel for Relators and set the matter for trial on the merits on May 11. Counsel filed a general denial on Relators' behalf on March 3. The question of jurisdiction under the UCCJA was apparently first raised during the May 11 hearing. The court directed the parties to file written briefs addressing the jurisdiction question.

After reviewing the briefs, the court rendered a decree on June 30. The court determined that Georgia is R.P.'s home state under the uniform act. *See* TEX. FAM.CODE ANN. §§ 152.002(6), 152.003(a)(1) (Vernon 1996). The court also found that it had continuing emergency jurisdiction under the provisions of section 152.003(a)(3)(B) of the act because the suit was brought under chapter 262 of the Family Code. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 24, 1995 Tex. Gen. Laws 3888, 3899 (amended 1997) (current version at TEX. FAM.CODE ANN. § 152.003(e) (Vernon Supp.1998)) (hereinafter,"TEX. FAM.CODE ANN. § 152.003(e)"). The decree continued DPRS as temporary managing conservator of R.P.

---

1. The factual background is based on the facts asserted in the parties' pleadings. *See* TEX R.APP. P. 52.3(g), 52.4(b).

DPRS subsequently presented a motion to extend the dismissal date in this cause. *See* Tex. Fam.Code Ann. § 263.401(b) (Vernon Supp.1998).[2] On July 15, the court extended the temporary orders; set a review hearing for September 23; and set the dismissal date for November 11. *Id.* Counsel for all parties signed this order indicating their approval "as to form."

Relators filed a motion on July 16 for the court to reconsider its jurisdiction ruling. Relators argued that although section 152.003(e) had been amended in 1997, the amended version of the statute did not apply to their case. The court set Relators' motion for hearing on August 19.

Apparently the court contacted the Georgia authorities to inform them of the jurisdictional conflict. *See* TEX. FAM.CODE ANN. § 152.006(c) (Vernon 1996). On the motion of the Richmond County (Georgia) Department of Family and Children Services, the Juvenile Court of Richmond County (the "Georgia court") entered an order on August 3 declining jurisdiction. Relators apparently were not notified of this action.

On August 19, the Texas court entered an order staying further proceedings in this cause until September 23. The court apparently believed the August 3 order of the Georgia court did not satisfy due process concerns and decreed that if the Georgia court:

> after notice and hearing, declines to exercise jurisdiction, the 77th District Court of Limestone County, Texas will assume subject matter jurisdiction of this cause. If the [Georgia court] has not declined jurisdiction by 9:00 a.m. on September 23, 1998, the Department's action in this cause shall be dismissed.

In early September, DPRS filed a petition with the Georgia court requesting a finding that Texas is the more convenient forum for the determination of R.P.'s custody. *See* GA. CODE ANN. § 19-9-47(b); TEX. FAM.CODE ANN. § 152.007(b) (Vernon 1996). The Georgia court served counsel for Jeffries by overnight mail, return receipt requested, on September 9. A copy of DPRS's petition was attached to the notice, which recited that a hearing was scheduled on the petition in the Georgia court on September 21. The Georgia court served Pennington directly with an identical notice mailed in an identical fashion to an address in Henderson, Texas.[3]

Relators' counsel mailed a letter to the Georgia court on September 14 declining to accept service on his clients' behalf and informing the court that he would not appear before it at the scheduled September 21 hearing. The Georgia court rendered an order declining jurisdiction on September 21. The order recites in pertinent part:

> The above captioned matter coming on for hearing on September 21, 1998. It appeared to the Court that the mother, Lynn Jeffries, was properly served[4] by certified mail and present at the hearing, represented by attorney Jimmy Walker. The father, Arthur Pennington, was properly served by certified mail and not present at the hearing.

The court determined that "[R.P.] is now a resident of the State of Texas" and made the following conclusions:

> Based on the evidence, the Court, finds that the appropriate forum to determine what is in the best interest of the child, including the care and placement of the child, is the State of Texas, 77th District Court.
>
> THEREFORE, IT IS ORDERED AND ADJUDGED, that the Juvenile Court of Richmond County, State of Georgia, declines jurisdiction of this case so that the

---

2. Because the court named DPRS as temporary managing conservator before January 1, 1998, the court was required to "establish a date for dismissal of the suit not later than the second anniversary of the date of the" "first hearing conducted on or after [January 1, 1998]." Act of May 31, 1997, 75th Leg., R.S., ch. 1022, § 108(c), 1997 Tex. Gen. Laws 3733, 3779.

3. DPRS's first amended petition filed in the Texas court on April 22, 1998 alleges that Pennington resides in Longview, Texas. Pennington was originally served with citation on August 19, 1997 at an address in Longview. Relators' mandamus petition claims Pennington's current whereabouts are unknown.

4. The record before us does not contain a citation served directly on Jeffries.

77th District Court in Texas may make a final ruling regarding the care and placement of said child.

On September 23, the Texas court again heard this matter. The court apparently did not make a written order at the conclusion of the hearing. Nevertheless, the docket sheet reflects that the court abated the proceeding and set a new dismissal date of December 17, 1998. The court wrote, "If the [Georgia court] obtains service of process upon all parties, provides notice to all parties and after hearing, declines jurisdiction, this Court will assume jurisdiction under Section 152.003(a)(4)(B) of the Texas Family Code."

## THE PARTIES' CONTENTIONS

Relators filed their mandamus petition with this Court on October 7. They assert that under the version of section 152.003(e) in effect when DPRS filed suit, the court below had no discretion to do other than dismiss the suit "on the 91st day after the date the court" first "exercised its jurisdiction." TEX. FAM.CODE ANN. § 152.003(e). The court issued its first temporary orders on August 22, 1997. Thus, Relators' position is that the court lost jurisdiction over this matter on November 21, 1997 and any orders issued by the court thereafter are void.

DPRS does not challenge Relators' contention that the 91–day rule applies in this case. Rather, it avers: (1) regardless of whether Georgia may have originally qualified as R.P.'s home state when this suit was filed, Georgia no longer meets the criteria of a home state; (2) Florida has never qualified as her home state during the time period pertinent to this suit; and therefore, (3) Texas must exercise jurisdiction under section 152.003(a)(2) of the UCCJA or R.P. will be left in a jurisdictional abyss in which no state can claim jurisdiction under the provisions of the uniform act. DPRS also argues that Texas became R.P.'s home state six months after her arrival and on this basis it could have simply dismissed this suit and refiled it in April asserting jurisdiction under the home state provisions of the UCCJA. Thus,

it contends it would be futile for this Court to grant the relief requested under the maxim *lex non præcipit inutilia, quia inutilis labor stultus.*[5] DPRS asks us to "rule that when both parents and the child are before the 'emergency' court, and the potential 'home state' jurisdiction of the state from which the child was transported to Texas, was never invoked within the statutory time frame, it is unnecessary to seek an 'order declining jurisdiction' and improper for the trial court to fail to exercise its jurisdiction and enter an appropriate final order."

Our view of the case differs somewhat from that of either of the parties.

## APPLICABLE LAW

### STANDARD OF REVIEW

Generally, Relators can obtain mandamus relief only upon showing that the court committed a clear abuse of discretion and that they have no adequate legal remedy. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). However, when a party establishes that the court rendered a void order, she is "entitled to mandamus relief without a showing that there is no adequate remedy by appeal." *In re Union Pac. Resources Co.*, 969 S.W.2d 427, 428 (Tex.1998) (orig.proceeding). "An order is void when a court has no power or jurisdiction to render it." *Urbish v. 127th Judicial District Court*, 708 S.W.2d 429, 431 (Tex. 1986) (orig.proceeding); *In re Fuentes*, 960 S.W.2d 261, 263 (Tex.App.—Corpus Christi 1997, orig. proceeding).

### THE UCCJA

Section 152.003 of the UCCJA provides that a Texas court "has jurisdiction to make a child custody determination" if:

(1) Texas:

(A) is the child's home state on the date the suit is filed; or

(B) had been the child's home state within six months before the suit is filed; the child is absent from Texas because she was

---

5. This maxim states, "The law commands not useless things, because useless labor is foolish."

BLACK'S LAW DICTIONARY 912 (6th ed.1990).

removed by a person claiming custody or for other reasons; and a parent or person acting as parent continues to live in Texas;

(2) it appears that no other state has jurisdiction under (1) and it is in the best interest of the child that Texas assume jurisdiction because:

(A) the child and her parents or the child and at least one contestant have a significant connection with Texas other than mere physical presence; and

(B) substantial evidence is available in Texas concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in Texas and:

(A) has been abandoned; or

(B) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or there is a serious and immediate question concerning the welfare of the child; or

(4) it is in the best interest of the child that Texas assume jurisdiction and:

(A) it appears that no other state has jurisdiction under (1), (2), or (3); or

(B) another state has declined to exercise jurisdiction on the ground that Texas is the more appropriate forum to determine the custody of the child.

TEX. FAM.CODE ANN. § 152.003(a) (Vernon 1996). These jurisdictional provisions have been characterized as: (1) home state; (2) significant connection; (3) emergency; and (4) default bases of jurisdiction. *Garza v. Harney,* 726 S.W.2d 198, 201 (Tex.App.— Amarillo 1987, orig. proceeding).

The UCCJA defines "home state" as:

the state in which the child, preceding the time involved, lived with the child's parents, a parent, or a person acting as parent for a least six consecutive months and, in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the

named persons are counted as part of the six-month period or other period.

TEX. FAM.CODE ANN. § 152.002(6). Consistent with the previous version of the UCCJA which the Legislature recodified without substantive change, the term "preceding the time involved" means the period of time *immediately* preceding the time involved. *See Jones v. Fowler,* 969 S.W.2d 429, 432–33 (Tex.1998). Texas courts have generally looked to the six-month period preceding the filing of suit to determine whether Texas qualifies as a child's home state. *See, e.g., In re S.A.V.,* 837 S.W.2d 80, 87 (Tex.1992); *Lemley v. Miller,* 932 S.W.2d 284, 286 (Tex. App.—Austin 1996, no writ); *Koester v. Montgomery,* 886 S.W.2d 432, 435 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding); *cf.* TEX. FAM.CODE ANN. § 102.003(9), (11) (Vernon Supp.1998) (person has standing to file a SAPCR if he has had statutorily-defined relationship with child "for not less than six months preceding the filing of the petition").

The version of section 152.003(e) applicable to this case provides:

A court that has jurisdiction of a suit under Subsection (a)(3) for which a court in another state may exercise jurisdiction under prerequisites substantially in accordance with Subsection (a)(1) or (2) may enter only a temporary order to protect the child. The suit shall be dismissed in this state on the date a court of competent jurisdiction in another state signs an order in the suit or on the 91st day after the date the court in this state exercised its jurisdiction, whichever date occurs first.

TEX. FAM.CODE ANN. § 152.003(e). The 75th Legislature amended section 152.003(e) to provide that subsection (e) "does not apply to a suit brought under Chapter 262" (*i.e.,* a suit filed by DPRS). *See* Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 7, 1997 Tex. Gen. Laws 2012, 2013–14 (current version at TEX. FAM.CODE ANN. § 152.003(e) (Vernon Supp. 1998)). The enabling legislation adopting this amendment provides:

This Act takes effect September 1, 1997, and applies to a suit affecting the parent-child relationship filed on or after that date. A suit filed before the effective date

of this Act is governed by the law in effect on the date the suit was filed, and the former law is continued in effect for that purpose.

Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 38, 1997 Tex. Gen. Laws 2012, 2023. Thus, we must look to the version of section 152.003(e) in effect prior to September 1, 1997.

Section 152.006 of the UCCJA sets out the duties of the trial court for determining whether another state is the more appropriate forum for a custody determination. Before hearing the matter, the court must "examine the pleadings and other information supplied by the parties" and the child custody registry established by the UCCJA to determine whether "proceedings may be pending in another state." *Id.* § 152.006(b) (Vernon 1996). If the court discovers after the commencement of proceedings in Texas that another state has proceedings pending concerning the matter, "it shall [immediately] inform the other court [of the concurrent proceedings] to the end that the issues may be litigated in the more appropriate forum." *Id.* § 152.006(c).

## APPLICATION

■ "Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties." *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 445 (Tex.1993). For this reason, we conclude that a party to a custody proceeding may challenge the court's jurisdiction under the UCCJA at any stage in the proceeding. The question we must decide is how the court must respond to such a challenge when the interests of a child are at stake and no other state with apparent jurisdiction has been called upon to exercise its jurisdiction. According to the record, three different states have potential jurisdiction over this case under the UCCJA. We address each of them separately.

## TEXAS

Relators argue that Texas does not have jurisdiction under the UCCJA because Georgia has home state jurisdiction and Florida has significant connection jurisdiction. How-

ever, Relators apparently did not bring these jurisdictional allegations to the attention of the court until nine months after the court first exercised jurisdiction in this case.

■ Section 152.003(a)(4) provides for default jurisdiction in Texas when it is in the child's best interest for the court to exercise jurisdiction and "it *appears* that no other state would have jurisdiction." TEX. FAM. CODE ANN. § 152.003(a)(4) (emphasis added). At the time DPRS filed suit, it *appeared* to the court that no other state had jurisdiction. Thus, the court properly exercised jurisdiction over this case under the default jurisdiction provisions of the UCCJA. *Cf. Swan v. Swan,* 106 Nev. 464, 796 P.2d 221, 223 (Nev. 1990) (court did not have default jurisdiction under UCCJA because "it could not have appeared to the lower court that no other state would have jurisdiction"); *Peloso v. Botkin,* 144 Vt. 461, 479 A.2d 156, 159 (Vt. 1984) (same).

■ DPRS insists that Texas is R.P.'s home state. Although it can be argued that Jeffries intended to make a home for herself and her children in Texas by virtue of the fact she enrolled her school-age daughter in a public school and sought employment for herself, Texas could not become R.P.'s home state until she had resided here for six months. The UCCJA gives Texas home state jurisdiction if Texas "is the home state of the child on the date of the commencement of the proceeding." TEX. FAM.CODE ANN. § 152.003(a)(1). Notwithstanding any arguable domiciliary intent on Jeffries' part, R.P. had not resided with Jeffries in Texas for a sufficient length of time to make Texas her home state in August 1997 when DPRS commenced this proceeding.

DPRS also asserts that by virtue of the passage of time Texas has become R.P.'s home state. On this basis, it contends that it can simply dismiss this suit and refile under the home state provisions of the UCCJA. Thus, DPRS contends judicial economy would not be served if we order the dismissal of this suit ostensibly because DPRS intends to refile, alleging Texas as R.P.'s home state.

We cannot consider what DPRS might do in response to our ruling in this case. That

issue will not be ripe for review until DPRS takes some further action and we are called upon to consider it. However, we find the Fort Worth court's analysis in a similar case persuasive where that court stated:

> During the three-year duration of this legal battle, the children have undoubtedly developed roots in Texas. However, we cannot allow the appellee to bootstrap his way into a Texas court based on relationships developed after suit was commenced.

*Irving v. Irving*, 682 S.W.2d 718, 721 (Tex. App.—Fort Worth 1985, writ dism'd) (children's father brought them to Texas four days before filing suit).

■ DPRS suggests Texas has significant connection jurisdiction because R.P., Pennington, and DPRS have significant connections to Texas beyond mere physical presence and substantial evidence exists in Texas concerning R.P.'s "present or future care, protection, training, and personal relationships." Tex. Fam.Code Ann. § 152.003(a)(2). We disagree. R.P.'s only connections with Texas are that her mother brought her into the state about a week before DPRS filed suit and DPRS continues to maintain temporary custody of her (no doubt contrary to her wishes and the wishes of her mother). *See Irving*, 682 S.W.2d at 721 (children whose father brought them to Texas four days before filing suit did not have significant connection with Texas); *see also* Tex. Fam.Code Ann. § 152.003(a)(2)(A) (child must have significant connection "other than mere physical presence in this state").

Nor do we agree that "substantial evidence" exists in Texas on the issue of R.P.'s present and future welfare. The only evidence in Texas touching on this issue consists of the evidence surrounding R.P.'s brief week-long sojourn in this state prior to suit and any evidence DPRS may have regarding Jeffries' conduct during the almost five months she was in this state. We do not consider this limited evidence "substantial."

## GEORGIA

DPRS argues that because Jeffries and R.P. did not reside in Georgia *immediately* preceding the time DPRS filed suit, Georgia has nothing more than "potential" home state jurisdiction. *See Jones*, 969 S.W.2d at 432–33 (construing Tex. Fam.Code Ann. § 102.003(9)); Tex. Fam.Code Ann. § 152.002(6). However, this argument ignores a provision contained in section 152.002(6) which is distinct from the provisions of section 102.003(9). Section 152.002(6), unlike section 102.003(9), provides that "[p]eriods of temporary absence of any of the named persons are counted as part of the six-month or other period." Tex. Fam. Code Ann. § 152.002(6). The Austin court has held that an absence from this state of eleven months qualifies as "temporary" under this provision. *See Lemley,* 932 S.W.2d at 286–87.

■ R.P. lived in Georgia with Jeffries for almost three years. R.P. had temporarily resided in Texas about a week when DPRS filed suit. Accordingly, we cannot say that the Texas court abused its discretion in determining Georgia is R.P.'s home state for purposes of the UCCJA. *See Koester*, 886 S.W.2d at 435.

## FLORIDA

■ Jeffries argues that R.P. and she have significant connections with Florida and "substantial evidence" exists in that state regarding R.P.'s present and future welfare. The record reflects R.P. was born in Florida and spent the first five years of her life there. R.P.'s mother, her maternal grandparents, and her extended family reside in Florida. The divorce court in Florida originally exercised jurisdiction over R.P.'s custody. We consider these connections far more significant than those which R.P. has in this state. Likewise, the evidence concerning R.P.'s present and future welfare is far more substantial in Florida where her custodial parent lives than in Texas.

To the extent DPRS possesses evidence relevant to Jeffries' suitability as a parent or R.P.'s present or future welfare, that evidence can be readily provided to a Florida court via deposition or live testimony as desired by that court. *See* Tex. Fam.Code Ann. § 152.020 (Vernon 1996); Fla. Stat. Ann. §§ 61.1338, 61.134 (West 1997).

For each of these reasons it appears that Florida has significant connection jurisdiction over this case under the UCCJA.

### RESOLVING JURISDICTIONAL CONFLICTS

 The question we must resolve is what should a court exercising default jurisdiction do when it discovers that another state may have jurisdiction over a proceeding under the UCCJA. "When the courts of more than one state have jurisdiction under [the UCCJA], priority in time determines which court will proceed with the action, but the application of the inconvenient forum principle of section [152.007] may result in the handling of the case by the other court." UNIF. CHILD CUSTODY JURISD. ACT § 6 cmt. (1988); *accord Geary v. Peavy*, 878 S.W.2d 602, 604 (Tex.1994) (orig.proceeding). In this case however, no other custody proceedings were pending when DPRS filed suit.

DPRS contends that a Texas court need not contact the court of another state with "potential jurisdiction" under the UCCJA to determine which is the more appropriate forum unless and until proceedings are actually commenced in the other court. The language of section 152.006(c) would seem to support this argument because it requires a Texas court to communicate with the court of another state only when a proceeding was pending in the other court before the Texas court assumed jurisdiction or a proceeding is commenced in the other state after the Texas court assumed jurisdiction. *See* TEX. FAM. CODE ANN. § 152.006(c). At least one state has taken this position. *See Rypma v. Stehr*, 68 Md.App. 242, 255, 511 A.2d 527, 534 (1986); *cf. Simpkins v. Disney*, 416 Pa.Super. 243, 248, 610 A.2d 1062, 1064 (1992) (court in which subsequent custody proceeding commenced need not decline jurisdiction in favor of prior proceeding in another state "when it is unaware or uninformed about the other proceeding").

In *Rypma*, the Maryland Court of Special Appeals determined that the provisions of the UCCJA do not apply in a case where no custody proceeding has been commenced in the other state in which jurisdiction allegedly lies. *Rypma*, 68 Md.App. at 255, 511 A.2d at 534. In a note the court observed:

We emphasize the limited nature of this holding. As we have said, it is based on the "unique facts" of this case—notably the lack of any evidence of custody proceedings pending in Iowa.

*Id.* n. 3.

 We agree with *Rypma* and hold that under the unique facts of this case, the provisions of the UCCJA did not apply at the time Relators questioned the Texas court's jurisdiction because no proceedings had been commenced in Georgia or Florida. However, after DPRS commenced a proceeding in Georgia at the court's direction, the provisions of section 152.006(c) became applicable.

Under section 152.006(c), a Texas court must immediately contact the court of another state if it discovers subsequently initiated custody proceedings are pending there. TEX. FAM.CODE ANN. § 152.006(c). The courts must communicate with each other "to the end that the issues may be litigated in the more appropriate forum." *Id.* The only mandatory duty imposed by this provision is that the courts *communicate* with each other. Because the Texas court first exercised jurisdiction in this matter, it continues to possess jurisdictional priority (even over the home state) unless both courts agree that Georgia is the more appropriate forum. *See* UNIF. CHILD CUSTODY JURISD. ACT § 6 cmt.; GA. CODE ANN. § 19–9–46(a) (Georgia cannot exercise jurisdiction in a custody proceeding if a proceeding is pending in another state with jurisdiction under the UCCJA at the time the Georgia petition is filed, unless the other court stays its proceeding under the inconvenient forum provisions of the UCCJA); *accord Rypma*, 511 A.2d at 534 (Maryland court appropriately exercised jurisdiction even though Iowa was the child's home state).

### CONCLUSION

The Texas court appropriately exercised default jurisdiction in this case because it appeared to the court that no other state had jurisdiction. When Relators challenged the court's jurisdiction, it promptly (and unnecessarily) sought to communicate with R.P.'s home state to resolve the question of which

was the more appropriate forum in which to adjudicate her custody. After DPRS commenced proceedings in Georgia, the Texas court properly continued to communicate with the Georgia court as required by section 152.006(c). Because Texas has jurisdictional priority under the UCCJA, the court acted appropriately in denying Relators' motion to dismiss. Accordingly, we deny Relators' petition for mandamus relief.