**In the Interest of E.K.N.**

No. 2–00–013–CV.

Court of Appeals of Texas, Fort Worth.

July 13, 2000.

Landrith & Kulesz, L.L.P., David T. Kulesz, Arlington, for Appellant.

Warmbrodt & Rachel, L.L.P., Randall B. Warmbrodt, Megan B. Rachel, Dallas, for Appellee.

PANEL B: DAY and HOLMAN, JJ.; and JOHN HILL, J. (Retired, Sitting by Assignment).

## OPINION

DIXON W. HOLMAN, Justice.

This is a restricted appeal taken from a no-answer default judgment against Appellant Kurt Neswald arising out of a suit affecting the parent-child relationship (SAPCR). Because Appellant failed to demonstrate error on the face of the record, we affirm the trial court's judgment.

## I. BACKGROUND

Appellant and Appellee Denise M. Page lived in California and began seeing one another in October 1994. The couple discovered in December that Appellee was pregnant. They moved in together and started saving for a house. The couple eventually bought a home and moved into it on June 30, 1995. On August 11, 1995, E.K.N. was born in West Hills, California.

After E.K.N.'s birth, the couple's relationship began to deteriorate. In May 1996, Appellant and Appellee got into an argument at a Malibu restaurant, which carried over to their home. Appellee locked Appellant out of their house and the police were called. Appellant was arrested and spent the night in jail although the charges eventually were dismissed. When Appellant returned home the following day, Appellee and E.K.N. were gone. Appellee returned several days later with a court order so that she could pack her belongings.

Two weeks later, Appellant received notice that Appellee had applied for governmental assistance and also was seeking a

protective order against him. A hearing was held in which both parties appeared, and on June 24, 1996, the Ventura County Superior Court entered a temporary protective order against Appellant. Although the court's order did not determine parentage, the California court referred to Appellant throughout its order as E.K.N.'s "parent" and "father." The court went on to grant Appellant visitation rights to E.K.N. Appellant was prohibited from contacting or telephoning Appellee, but Appellant and Appellee began talking that same evening and eventually moved back in together in time for E.K.N.'s first birthday on August 11, 1996.

On September 23, 1996, the Ventura County District Attorney's Office filed an action numbered D247383 against Appellant seeking to establish a parent-child relationship between him and E.K.N. and an order to require Appellant to pay child support and health insurance. The petition alleged that Appellant was the natural father and parent of E.K.N. and that E.K.N. had been receiving public assistance beginning on June 10, 1996. The court entered a final judgment in that proceeding on August 15, 1997, which created a parental relationship between Appellant and E.K.N and ordered Appellant to pay child support for E.K.N. in the amount of $716 per month to begin on August 1, 1997. The court also ordered Appellant to pay child support in the amount of $2,127 for the period between June 10, 1996 and September 30, 1996.

Although the couple tried to rebuild their relationship through counseling, they were unsuccessful. The two permanently separated on January 31, 1998, after Appellee attacked a 12–year–old soccer referee during a children's soccer match. Appellee packed her station wagon with as much as it would hold and drove off with E.K.N. and her other son by a previous marriage. Appellant has not seen them since.

Appellee and E.K.N. moved to Tarrant County on February 16, 1998. Appellant and Appellee communicated by telephone and e-mail, but Appellee would not tell him where she was living. On May 4, 1999, Appellant filed a petition to establish a parental relationship seeking child support, custody, and visitation of E.K.N. in the Los Angeles County Superior Court. On July 2, 1999, Appellee filed a SAPCR in Tarrant County seeking a permanent order that Appellee be appointed sole managing conservator of E.K.N. and that Appellant pay child support. The petition also sought various temporary orders in E.K.N.'s best interest. Appellant was served with process on July 16, 1999, and a temporary hearing was set for July 22, 1999. Appellant neither appeared nor answered. The Texas court entered temporary orders appointing Appellee sole managing conservator finding that it had jurisdiction over both E.K.N. and Appellee.

On September 10, 1999, the Texas court conducted a final hearing on Appellee's SAPCR. Appellant defaulted. Appellee moved for a default judgment against Appellant, and, after hearing evidence, the court entered judgment in favor of Appellee. In its final order, the Texas court appointed Appellee as sole managing conservator and ordered Appellant to pay $750.16 child support per month. On January 10, 2000, Appellant filed his notice of restricted appeal. *See* Tex.R.App. P. 26.1(c), 30.

## II. POINTS ON APPEAL

Appellant brings two points on appeal. In the first, Appellant contends that the Texas court lacked jurisdiction to enter a default judgment against him because it had notice of a similar custody suit pending in California, which required the Texas court to stay its proceedings under the Texas version of the Uniform Child Custody Jurisdiction Act (UCCJA).[1] *See* Tex.

1. Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 152.006, 1995 Tex. Gen. Laws 113,

FAM.CODE ANN. § 152.006(a) (Vernon 1996). In his second point, Appellant complains that the trial court erred by asserting jurisdiction and entering a default judgment against him because the prior, *ex parte* proceeding in California vested the Ventura County Superior Court with continuing, exclusive jurisdiction under the Parental Kidnapping Prevention Act (PKPA). *See* 28 U.S.C.A. § 1738A (West 1994).

## III. RESTRICTED APPEAL

■ Rule 30 of the Texas Rules of Appellate Procedure provides that a party who did not participate, either in person or through counsel in the hearing that resulted in the judgment complained of and who did not timely file a postjudgment motion or request for findings of fact and conclusions of law, or a notice of appeal within the time permitted by Rule 26.1(a), may file a notice of appeal within the time permitted by Rule 26.1(c). TEX.R.APP. P. 30. This type of appeal, known as a restricted appeal, is a direct attack on the trial court's judgment. *See Barker CATV Constr., Inc. v. Ampro, Inc.,* 989 S.W.2d 789, 792 (Tex.App.—Houston [1st Dist.] 1999, no pet.). It is typically taken from a default judgment that has been rendered after a party fails to attend trial. *See Texaco, Inc. v. Central Power & Light Co.,* 925 S.W.2d 586, 589 (Tex.1996). A default judgment can be rendered either before or after the defendant files an answer. *See Attorney Gen. of Tex. v. Orr,* 989 S.W.2d 464, 468 (Tex.App.—Austin 1999, no pet.).

■ A restricted appeal is available for the limited purpose of providing a party that did not participate at trial with the opportunity to correct an erroneous judgment. *See Onyx TV v. TV Strategy Group, L.L.C.,* 990 S.W.2d 427, 429 (Tex. App.—Texarkana 1999, no pet.). It is not available to give a party who suffers an adverse judgment at its own hands another opportunity to have the merits of the case reviewed, but it does afford an appellant the same scope of review as an ordinary appeal, that is, a review of the entire case. *See Gunn v. Cavanaugh,* 391 S.W.2d 723, 724 (Tex.1965); *Onyx TV,* 990 S.W.2d at 429.

■ In order to directly attack the trial court's judgment, a restricted appeal must: (1) be brought within six months after the trial court signs the judgment, (2) by a party to the suit, (3) who did not participate in the actual trial, and (4) the error complained of must be apparent from the face of the record. *See Norman Communications v. Texas Eastman Co.,* 955 S.W.2d 269, 270 (Tex.1997); *DSC Fin. Corp. v. Moffitt,* 815 S.W.2d 551, 551 (Tex. 1991); *Flores v. Brimex L.P.,* 5 S.W.3d 816, 819 (Tex.App.—San Antonio 1999, no pet.). The face of the record, for purposes of restricted appeals, consists of all the papers on file in the appeal, including the reporter's record, as they existed in the trial court at the time the default judgment was entered. *See Norman,* 955 S.W.2d at 270; *DSC Fin. Corp.,* 815 S.W.2d at 551; *Flores,* 5 S.W.3d at 819; *Stankiewicz v. Oca,* 991 S.W.2d 308, 311 (Tex.App.—Fort Worth 1999, no pet.). There is no question that Appellant meets the first three requirements for a restricted appeal, but here the overriding issue is whether Appellant demonstrated on the face of the record that the trial court lacked jurisdiction to enter a default judgment in favor of Appellee in her SAPCR.

### A. The Texas UCCJA

■ As a general rule, section 152.006 of the Texas Family Code sets out the trial court's duties for determining whether another state is the more appropriate forum for a custody determination. *See In re Jeffries,* 979 S.W.2d 429, 435 (Tex.App.—

142–43 (amended and recodified 1999) (current version at TEX. FAM.CODE ANN. §§ 152.206, 152.307 (Vernon Supp.2000)). Because we are bound by the law as it existed at the time

this action accrued, all Texas Family Code citations in this case will be to the appropriate sections as they existed before the 1999 amendments.

Waco 1998, no pet.). Appellant contends that error is apparent on the face of the record due to the fact that the record affirmatively establishes the trial court lacked jurisdiction to enter a default judgment against him. He argues because the Texas trial court had notice that a similar suit was pending in California, it was required under the Texas version of the UCCJA to stay its proceedings and communicate with the out-of-state court to resolve any jurisdictional disputes. *See* TEX. FAM. CODE ANN. § 152.006.

 As a preliminary matter, the Texas trial court had subject matter jurisdiction because Texas was the home state when the Texas proceeding was commenced.[2] *See id.* §§ 152.002(6), 152.003(a)(1)(A) (Vernon 1996). Section 152.006(a) of the Texas Family Code guides trial courts in making jurisdictional decisions when a simultaneous proceeding is pending in another state. *Id.* § 152.006(a). That section states:

> [a] court of this state may not exercise its jurisdiction under this chapter if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

*Id.* A plain reading of the statute indicates that the Texas trial court was required to stay its proceeding only if it determined (1) the California court was exercising jurisdiction substantially in conformity with Chapter 152 of the Texas Family Code and (2) the California court had refused to abate its proceeding.

 After carefully reviewing the applicable law and evidence as it existed when the Texas trial court entered its default judgment against Appellant, we conclude that the Los Angeles County Superior Court was not exercising jurisdiction substantially in conformity with Chapter 152. While both the Texas and California versions of the UCCJA were drafted to promote the UCCJA's underlying goals, a comparison of the UCCJA, the Texas Family Code, and the California Family Code, confirms that they are not substantially similar as applied. *Compare* UNIF. CHILD CUSTODY JURISDICTION ACT § 1, 9 U.L.A. 271 (1999) *with* TEX. FAM.CODE ANN. § 152.001 (Vernon 1996) *and* CAL. FAM.CODE § 3401 (West 1994), *repealed by* ch. 867, § 2, 1999 Stat. 668 (current version at CAL. FAM.CODE § 3461). In Texas, home state jurisdiction prevails over significant connection jurisdiction.[3] *See* TEX. FAM.CODE ANN. § 152.003(a)(1); *Phillips v. Beaber*, 995 S.W.2d 655, 659 (Tex.1999); *Coots*, 959 S.W.2d at 302. *But see* CAL. FAM.CODE § 3403(a) (West 1994), *repealed by* ch. 867, § 2, 1999 Stat.

---

**2.** Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, secs. 152.002(6), 152.003(a)(1)(A), 1995 Tex. Gen. Laws 113, 141 (amended and recodified 1999) (current versions at TEX. FAM.CODE ANN. §§ 152.102, 152.201–.204 (Vernon Supp.2000)).

**3.** The Texas version of the UCCJA differs significantly from the uniform act. Because the majority of the states follow the uniform act, they do not prioritize "home state" jurisdiction over the "significant connection" jurisdiction. *See Coots v. Leonard*, 959 S.W.2d 299, 302 (Tex.App.—El Paso 1997, no pet.). One commentary has noted:

> [b]ecause these two provisions [home state and significant connection jurisdiction] are of equal rank under the UCCJA, the priority to decide the issue of custody between two

states with concurrent jurisdiction is determined by the first filing. Unfortunately the uniform act does not conform to the preemptive federal act on the subject—the Parental Kidnapping Prevention Act of 1980 (PKPA) 28 U.S.C.A. § 1738A, which accords 'home state' priority for full faith and credit recognition. The Texas version of the UCCJA conforms to the PKPA; the home state is preferred and is superior to a 'significant connection' state. Only if a home state does not exist or declines jurisdiction will the significant connection ground prevail.

*Id.* (quoting JOHN J. SAMPSON & HARRY L. TINDALL, TEXAS FAMILY CODE ANNOTATED § 152.003 (1997)).

668 (current version at CAL. FAM.CODE § 3421). By including "it appears that no other state would have jurisdiction under Subdivision (1)" in section 152.003(a)(2), the Texas Legislature made it clear that home state jurisdiction is to be given priority over significant connection jurisdiction. *See* TEX. FAM.CODE ANN. § 152.003(a)(2). *See generally In re Lambert*, 993 S.W.2d 123, 129 (Tex.App.—San Antonio 1999, no pet.); *Lemley v. Miller*, 932 S.W.2d 284, 286 (Tex.App.—Austin 1996, no pet.). Therefore, significant connection jurisdiction should be employed only in those instances where Texas is not the home state and it appears that no other state could assert home state jurisdiction. *See Lemley*, 932 S.W.2d at 286.

Because it is undisputed that Texas qualifies as the home state, the Los Angeles County Superior Court could not have exercised jurisdiction in substantial conformity with Chapter 152. Even if it could be argued that the Los Angeles County Superior Court was exercising jurisdiction in accordance with Chapter 152, there is no evidence in the record before us that the Los Angeles County Superior Court refused to abate Appellant's child custody case. *See* TEX. FAM.CODE ANN. § 152.006(a). For these reasons, the Texas trial court did not err by not abating Appellee's SAPCR.

Appellant also suggests that once the Texas trial court was made aware of the pending suit in California, it had a duty either under section 152.006(b) or 152.006(c) to communicate with the California court to determine how to proceed. *See* TEX. FAM.CODE ANN. § 152.006(b), (c); *White v. Blake*, 859 S.W.2d 551, 564 (Tex. App.—Tyler 1993, no writ). However, the portion of those sections that impose a duty on the trial court to communicate with the out-of-state court are applicable only in the event that the Texas court first determines that the other state is exercising jurisdiction in substantial conformity with Chapter 152. Here, the Texas court did comply with the applicable procedures set forth in section 152.006(b). *See Jeffries*, 979 S.W.2d at 435 (indicating that before hearing a child custody matter, the Texas court must examine the pleadings and other information supplied by the parties and the child custody registry established by the UCCJA to determine whether proceedings may be pending in another state). The Texas court indicated in its September 10, 1999 order that it had reviewed the record and the evidence before it, had found that another suit was pending in California, and that no other court had home state jurisdiction. Because we have already decided that the Los Angeles County Superior Court was not exercising jurisdiction in conformity with Chapter 152, the Texas court was not required to communicate with the Los Angeles County Superior Court concerning whether the California case had been abated. We overrule point one.

## B. The PKPA

While the Los Angeles County Superior Court may not have been exercising jurisdiction in substantial conformity with Chapter 152 of the Texas Family Code, it may have been able to exercise jurisdiction under section 3403(a)(2) of the California Family Code. CAL. FAM.CODE § 3403(a)(2). Where we are left with two states claiming concurrent jurisdiction under the UCCJA as in this case, we look to the PKPA for guidance. *See Allison v. Allison*, 3 S.W.3d 211, 214 (Tex.App.—Corpus Christi 1999, no pet.). Under the PKPA, every state must give full faith and credit to child custody determinations of other states. *See* 28 U.S.C.A. § 1738A (West 1994); *In re S.A.V.*, 837 S.W.2d 80, 87 (Tex.1992). A "custody determination" means a judgment, decree, or other court order that provides for the custody or visitation of a child, including permanent, temporary, initial, and modifying orders. *Id.* § 1738A(b)(3). A court that has made a child custody determination consistent with the provisions of section 1738A has continuing jurisdiction so long as that state

has jurisdiction under its own laws and either the child or a contestant continues to reside in the state. *Id.* § 1738A(d); *Coots,* 959 S.W.2d at 304.

■■■■■ The Los Angeles County Superior Court could not be a court of continuing, exclusive jurisdiction under the PKPA because it never made a child custody determination, which is a prerequisite to gaining continuing, exclusive jurisdiction under the PKPA. *See* 28 U.S.C.A. § 1738A(b)(3), (d). Instead, Appellant argues that the Ventura County Superior Court has continuing, exclusive jurisdiction because it had entered a restraining order in 1996, which happened to contain a recitation establishing a visitation schedule between Appellant and E.K.N. In order to qualify as a court of continuing jurisdiction under the PKPA, the court assuming jurisdiction must exercise it in conformity with the laws of that particular state. *See id.* § 1738A(c)(1), (d). Under California law, courts are prohibited from granting visitation rights orders where the parties are not married. *See Barkaloff v. Woodward,* 47 Cal.App.4th 393, 55 Cal.Rptr.2d 167, 170 (1996). The record shows that Appellant and Appellee were never married. Therefore, the Ventura County Superior Court could not qualify as a court of continuing, exclusive jurisdiction under the PKPA. *See id.* Moreover, no proceedings were pending in the Ventura County Superior Court at the time Appellee filed her suit in Texas. In fact, Appellant's petition seeking to establish a parental relationship was filed in the Los Angeles County Superior Court, not the Ventura County Superior Court. Therefore, we cannot say that the Texas trial court erred by failing to abate the Texas proceeding and by entering a default judgment against Appellant. We overrule point two.

## IV. CONCLUSION

Because Appellant failed to meet his burden of showing error on the face of the record, we affirm the trial court's judgment.