IN RE JULI BROWN

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-263-CV

IN RE JULI BROWN RELATOR

------------

ORIGINAL PROCEEDING

------------

OPINION

------------

I.  Introduction

The primary issue we address in this original proceeding is whether,  under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA),
(footnote: 1) Texas is the “home state” of Erik and Kodi, the children of Relator Juli Brown and Real Party in Interest Keith Gordon Brown (RPI).  For the reasons set forth below, we hold that Missouri has jurisdiction over the children under the UCCJEA and, consequently, that at this point, the Tarrant County trial court lacks jurisdiction over the children.  Accordingly, we will conditionally grant the writ.

II.  Procedural Background

Relator Juli and RPI Keith are both pilots for American Airlines; they married in April of 2000.  During the marriage, they had two children, Kodi, who is now three years old, and Erik, who is eleven months old.  On June 16, 2006, at 10:08 a.m., Juli filed a petition for divorce from Keith in Osage County, Missouri.
(footnote: 2)  Keith filed for divorce from Juli that same day at 4:26 p.m. in Tarrant County, Texas.  

Three days later, on June 19, 2006, the Tarrant County trial court entered a temporary restraining order against Juli and set a hearing on the issue of temporary orders for June 29, 2006.  
On June 28, 2006, Juli 
filed a motion to abate the Texas proceedings.
(footnote: 3)  The Tarrant County associate judge held a

hearing the next day on Juli’s motion to abate, found that the trial court possessed jurisdiction over the children, and denied Juli’s 
motion to abate.
(footnote: 4)  
Juli then filed the present original proceeding.

III.  Standard of Review

Mandamus is appropriate when a Texas court has asserted jurisdiction over a child custody matter contrary to the UCCJEA.  
Tex. Fam. Code Ann. §
§ 152.101-.317.  Whether a trial court has subject matter jurisdiction is a question of law that we review under the de novo standard.  
Mayhew v. Town of Sunnyvale
, 964 S.W.2d 922, 928 (Tex. 1998), 
cert. denied
, 526 U.S. 1144 (1999); 
see also Powell v. Stover
, 165 S.W.3d 322, 324-25 (Tex. 2005) (orig. proceeding).  With respect to the resolution of factual issues or matters committed to the trial court’s discretion, we may not substitute our judgment for that of the trial court unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court’s decision is arbitrary and unreasonable.  
Walker v. Packer
, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). 

IV.  Home State Determination under the UCCJEA

Subject matter jurisdiction over custody issues in Texas is governed by the UCCJEA.  
See 
Tex. Fam. Code Ann. 
§
§
 152.201-.210
.
 Section 152.201 of the Texas Family Code states the following test for initial child custody jurisdiction: 

(a) Except as otherwise provided in Section 152.204, a court of this state has jurisdiction to make an initial child custody determination only if:

(1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:

(A) the child and the child’s parents, or the child and at leaset one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships; 

(3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or 

(4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

  

Id.
 § 152.201(a).  The family code defines “home state” as “the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding.”
 
 Id
. 
§ 152.102(7).  The date of the commencement of the child custody proceeding is used as the point of reference from which to determine the child’s home state.  
In re Oates
, 104 S.W.3d 571, 578 (Tex. App.—El Paso 2003, orig. proceeding).  “Commencement” is defined as “the filing of the first pleading in a proceeding.”  
Tex. Fam. Code Ann
.
 at §
 152.102(5).

Family code section 152.206(a) provides that a Texas court “may not” exercise jurisdiction if, at the time of the commencement of the Texas proceeding, (1) a proceeding concerning the custody of the child has been commenced in a court of another state, and (2) that state has jurisdiction substantially in conformity with this chapter, that is in conformity with the Texas UCCJEA.  
Id.
 at 
§ 152.206(a).  Here, Juli filed for divorce first in Missouri, but the question remains whether Missouri’s purported jurisdiction is “substantially in conformity with this chapter.”  
See
 
id.
  Resolution of that question requires the determination of whether Texas is the children’s home state because, under the Texas UCCJEA, home-state jurisdiction trumps all other possible bases of jurisdiction in an initial child custody action; if Texas is the children’s home state, Missouri could not be exercising jurisdiction “substantially in conformity with this chapter.”  
See
 
id
. 
§
§
 152.201, .206(a); 
accord Powell
, 165 S.W.3d at 328 (holding Tennessee’s exercise of jurisdiction
 
was “substantially in accordance with [the UCCJEA]” because Tennessee was child’s home state).

In determining home-state jurisdiction, the Texas Supreme Court has adopted a “physical presence” test that focuses exclusively on the child’s physical location for the six month period preceding the filing of a petition requiring an initial child-custody determination.  
Powell
, 165 S.W.3d at 327-28.  In adopting the physical presence test in 
Powell
, the supreme court specifically rejected use of a “subjective intent” test and a “totality of the circumstances” test to determine home-state jurisdiction under the Texas UCCJEA.  165 S.W.3d at 326-27.  Consequently, the parents’ “subjective intent” as to the child’s home state is not relevant; that is, a parent’s view that a six-month residency in another state is temporary is not controlling.  
Id.
 at 326 (“We . . . decline to apply a test to determine where a child ‘lived’ based on the parties’ subjective intent.”)  Likewise, a “totality of the circumstances” test that would consider where the parties’ vehicles are registered, where they vote, and where they pay their taxes is not applied in deciding the home state of a child.  
Id.
 at 327 (holding that “a test based on the totality of the circumstances suffers from essentially the same weakness as a purely intent-based test; both seek to promote flexibility at the expense of the jurisdictional certainty that the home-state provision was intended to provide”).
  Thus, we now review the evidence concerning the children’s physical presence in the State of Texas.  
See id.

 
 
A.  Evidence of Kodi’s Home State

Juli testified that the family has lived in Missouri since February 2004; they own a 4,000 square-foot-house, “an old hunting lodge” that was renovated in 1999-2000.  Juli’s mother, Georgina, lives in a small cottage approximately twenty feet from the main house.  The couple also owns a house in Euless, Texas; Keith’s mother and step-father live in the house, and Juli, Keith, Kodi, and Erik stay at the Texas house when they are in Dallas.
(footnote: 5)  

Juli and Keith disagree about the exact amount of time the children had spent in Texas and Missouri during the six months before Juli and Keith filed their respective divorce petitions seeking child custody.  But they both testified that for the six months prior to June 16, 2006, Kodi stayed in Missouri with Georgina whenever Juli and Keith worked.  Keith testified that Kodi spent about eighty to ninety percent of his time in Missouri because Georgina was in Missouri and she was his primary babysitter.  Juli testified that Kodi made only short visits to Texas during the six months immediately proceeding this litigation; he spent just four or five days in Texas during the six-month period. 

Keith testified that whenever Juli was not working she would be in Missouri.  Keith testified that he spends all of his free time in Missouri because Kodi is there.  Keith testified that “training” to “change airplanes” takes about a month and that while Juli underwent training in Dallas in January 2006, Kodi may have been in Texas as much as “half the time.”  Kodi had been attending preschool in Missouri for one day a week for the past two years, and he is enrolled for the fall 2006 semester of preschool; his pediatrician is also located in Missouri.  

This evidence demonstrated that Texas has never been Kodi’s home state; there is no evidence that Kodi lived in Texas with a parent or person acting as a parent for at least six consecutive months immediately before the commencement of these proceedings.  
See 
Tex. Fam. Code Ann. 
§ 152.101(7); 
Walker
, 827 S.W.2d at 839-40
.
  Kodi has always “lived” in Missouri, even when his parents were working in another state.  
See Powell
, 165 S.W.3d at 326.  Both Juli and Keith testified that they spent their time off in Missouri; Juli because she said the family lived in Missouri, Keith because he said Kodi was there.
(footnote: 6)  
See 
Tex. Fam. Code Ann. 
§ 152.102(7) (recognizing that a period of a parent’s temporary absence from state is nonetheless included in the six-month period establishing child’s “home state”).

Keith points to the fact that Kodi spent two and a half or three months in Hungary this summer with Georgina as defeating a determination that Missouri is Kodi’s home state.  But Kodi’s three-month visit to Hungary was clearly a temporary absence from Missouri; Juli testified that he spent the summer there with his grandmother—not with a parent or person acting as a parent as necessary to statutorily generate a new home state—to work on his second language, Hungarian.  
See id. 
§ 152.201(a)(1) (recognizing that state remains home state if child lived in state for six months 
and is absent from state 
but parent continues to live in state)
; 
In re Lewin
, 149 S.W.3d 727, 739 (Tex. App.—Austin 2004, orig. proceeding) (holding that child’s visits to Texas and Canada were clearly temporary absences from home state of New Jersey); 
 
Milner v. Kilgore
, 718 S.W.2d 759, 760-61 (Tex. App.—Corpus Christi 1986, orig. proceeding) (holding, under predecessor to Texas’s version of UCCJEA, that child’s near two-month visit to grandparents in Texas was “only a period of temporary absence from Missouri”).
 

We hold that Texas is not Kodi’s home state and that Missouri is Kodi’s home state.  Therefore, the trial court abused its discretion by determining that Texas had jurisdiction because an initial suit concerning Kodi’s custody had been filed in Missouri and Missouri, as Kodi’s home state, may exercise jurisdiction substantially in accordance with the UCCJEA.
(footnote: 7)  
See 
Tex. Fam. Code Ann. 
§ 152.206; 
Powell
, 165 S.W.3d at 328.

B.  Evidence of Erik’s Home State

After Erik was born on September 5, 2005, Erik stayed at the Missouri house for almost four months before his first visit to Texas on December 28, 2005.  Both Juli and Keith testified that when Juli returned to work on December 28, she took Erik to Texas so that her mother-in-law could care for him while Juli was working and so that Juli could continue to breast feed Erik.  Between December 28, 2005 and the commencement of these proceedings on June 16, 2006, Juli and Erik spent about eighteen days of each month in Texas while Juli was working, but on her days off, the two would always return to Missouri.  

Texas is clearly not Erik’s home state; the time period between his first trip to Texas on December 28, 2005 and July 16, 2006 is less than the six-month requirement to establish home-state jurisdiction.  
See
 
Tex. Fam. Code Ann. 
§ 152.101(7).  Nor do we hold that Missouri is Erik’s home state.  Erik spent only four or four and a half months in Missouri before he went to Texas, and for several months prior to the commencement of the litigation, he had been spending a majority of his time—eighteen days each month—in Texas.  
See
 
Mo. Ann. Stat. 
§§ 452.445(4) (West 2006) (using a definition of “home state” that is very similar to the definition used in the Texas statute),  452.450.1 (1) (a), (b) (setting forth when Missouri possesses home-state jurisdiction). 

Although Missouri could not assert home-state jurisdiction over Erik, Missouri’s version of the UCCJEA’s significant connection jurisdiction provides that a Missouri court may assert jurisdiction if it is in the child’s best interest because (a) the child and his parents have a significant connection with the state and (b) substantial evidence concerning the child’s present and future care, protection, training, and personal relationships is available in the state.  
Mo. Ann. Stat. 
§ 452.450.1(2).  These significant connection jurisdictional provisions are very similar to Texas’s significant connection jurisdictional provisions.  
See
 
Tex. Fam. Code Ann.
 § 152.201(2)(A), (B).  Texas requires the same two findings, but unlike Missouri, Texas does not require a finding that it is in the best interest of the child that a court of this State assume jurisdiction because of the two findings.  
Compare 
Mo. Ann. Stat. 
§ 452.450.1(2) 
with
 
Tex. Fam. Code Ann.
 § 152.201(2)(A), (B).

Erik and his parents have significant connections to Missouri—for example, Juli and Keith have a large house in Missouri, Juli testified that “everything that’s valuable and meaningful” to her is in the Missouri house, Erik and Juli spent the first few months of Erik’s life at the Missouri house, Juli and Keith returned to Missouri when they were not working,  and Juli’s mother lives in Missouri.  
See 
Mo. Ann. Stat. 
§ 452.450.1(2)(a) (2006); 
Reed v. Reed
, 62 S.W.3d 708, 714 (Mo. App. W.D. 2001); 
see also 
Tex. Fam. Code Ann. § 
152.201(a)(2)(A); 
In re Jeffries
, 979 S.W.2d 429, 436-37 (Tex. App.—Waco 1998, orig. proceeding). 
 Additionally, substantial evidence concerning Erik’s present and future care, protection, training, and personal relationships is available in Missouri—for example, Erik’s primary pediatrician is in Missouri, Juli testified that she lives in Missouri, and almost all of Erik’s belongings are in the Missouri house.  
See 
Mo. Ann. Stat
. § 452.450.1(2)(b);
 Reed
, 62 S.W.3d at 714; 
see also 
Tex. Fam. Code Ann. § 
152.201(a)(2)(B); 
Jeffries
, 979 S.W.2d at 436-37.  
Thus, a Missouri court could determine that under the Missouri UCCJEA provision dealing with significant connection jurisdiction it would be in Erik’s best interest for Missouri to assume jurisdiction over him; a Missouri court exercising jurisdiction over Erik based on this determination would be exercising significant connection jurisdiction substantially in compliance with its UCCJEA.  
See 
Mo. Ann. Stat
. § 452.450.1(2).  And based on the almost identical significant connection provisions in Texas’s UCCJEA, Missouri’s exercise of significant connection jurisdiction over Erik would likewise be substantially in compliance with Texas’s UCCJEA.
  See 
Tex. Fam. Code Ann. § 
152.201(a)(2)
. 
 
  

Finally, even in light of Erik’s and his parents’ significant connections to Missouri, because Erik has no home state, Texas could conceivably still exercise significant connection jurisdiction over Erik under section 152.201(a)(2) if Erik and his parents have significant connections to Texas.   
See id
.  But suit was first brought in Missouri. 
See id
. 
§ 152.206(a);
 Ruffier v. Ruffier
, 190 S.W.3d 884, 889 (Tex. App.—El Paso 2006, no pet.). Accordingly, section 152.206(a)—prohibiting Texas from exercising jurisdiction if a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter— controls, and because the Missouri court was exercising jurisdiction over Erik substantially in conformity with Texas’s UCCJEA’s significant connection jurisdictional provision, Texas trial courts are statutorily precluded from exercising jurisdiction over Erik unless the Missouri court terminates or stays its proceedings based on a finding that Texas would be a more convenient forum.  
See 
Tex. Fam. Code Ann. 
§ 152.206(a); 
In re Presley
, 166 S.W.3d 866, 868 (Tex. App.—Beaumont 2005, orig. proceeding).  Unless and until Missouri has declined to exercise jurisdiction in favor of Texas, Texas is not authorized to assert jurisdiction over Erik’s custody determination. 
 See 
Tex. Fam. Code Ann.
 § 152.206(a).  Because a proceeding concerning the custody of Erik had been commenced in another state having jurisdiction substantially in compliance with the Texas UCCJEA, we need not undertake an analysis to determine whether significant connection jurisdiction exists in Texas.
(footnote: 8)  

We hold that the Texas trial court did not have jurisdiction over Erik because a proceeding concerning the custody of Erik had already been commenced in Missouri—where Erik and his parents have significant connections.  
See
 Tex. Fam. Code Ann. 
§ 152.206(a); 
Mo. Ann. Stat. 
§ 452.450(1)(b) (recognizing that a Missouri court has jurisdiction to make an initial child custody determination on “significant connection” grounds).  Therefore, the trial court abused its discretion in determining that Texas had jurisdiction because Missouri was exercising jurisdiction over Erik substantially in accordance with the Texas UCCJEA.  
See 
Tex. Fam. Code Ann. 
§ 152.206(a); 
Powell
, 165 S.W.3d at 328.

V.  Keith’s Arguments

In his response, Keith makes numerous arguments that he contends establish Texas’s jurisdiction over his divorce action.  Keith argues that Texas can maintain the parties’ divorce action even if Missouri is the home state for the custody issues.  In some circumstances, a trial court may exercise jurisdiction over issues related to the dissolution of a marriage but may be restricted from exercising jurisdiction over child custody issues.  
See
 
Tex. Fam. Code Ann.
 § 6.308(a), (b)(2); 
see also Seligman-Hargis v. Hargis
, 186 S.W.3d 582, 586 (Tex. App.—Dallas 2006, no pet.).  
But see Powell
, 165 S.W.3d at 324, 328 (noting wife filed for divorce in Texas and requiring stay and dismissal of Texas “proceedings” unless Tennessee court determined Texas was a more appropriate forum).  The issue before us, however, is not whether Texas possesses jurisdiction over the parties’ divorce action; the issue before us in this original proceeding is whether Texas possesses jurisdiction to make an initial child custody determination pursuant to the terms of the UCCJEA.  Accordingly, we do not address the jurisdictional issues related to the parties’ divorce action that are raised by Keith in his response.

VI.  Conclusion

We conditionally grant the writ.  The trial court is ordered to communicate with the Missouri court and, until such time that the Missouri court declines jurisdiction, the trial court is ordered to stay all proceedings related to the initial child custody determination.  
See
 
Tex. Fam. Code Ann. 
§ 152.206(a), (b).  If the Missouri court does not determine that Texas is a more appropriate forum, the trial court shall dismiss all proceedings related to the initial child custody determination. 
See id
. 

We are confident that the trial court will comply with this opinion within the next forty-five days.  The writ will issue only if the trial court fails to comply
.  All other relief requested by Relator is denied.

SUE WALKER

JUSTICE

PANEL A:  LIVINGSTON, DAUPHINOT and WALKER, JJ.

DELIVERED:  September 14, 2006

  

  

FOOTNOTES
1:
See 
Tex. Fam. Code Ann
. 
§§ 152.101
-.317 (Vernon 2003 & Supp. 2006).

2:
The petition was date stamped but not time stamped.  However, Juli presented the court with a “Corrected Affidavit” of the clerk for the Circuit Court of Osage County, Missouri, in which the clerk states that Juli “filed her petition for Dissolution of Marriage on June 16, 2006 at 10:08 a.m. per filing records.”  

3:
Keith points out that Juli’s written motion to abate alleged only that he failed to meet the residency requirements to maintain a divorce in Texas; it did not allege that the Texas court lacked subject matter jurisdiction over the children.  The record of the abatement hearing, however, documents that the central dispute at this hearing was whether the Tarrant County trial court possessed jurisdiction over the children, and the associate judge expressly ruled at the end of the hearing that “this court does have jurisdiction . . . under the UCCJEA.”  
Consequently, the issue is properly before us.

4:
Juli attempted to appeal the associate judge’s temporary order, but the trial court dismissed her appeal as untimely.  Because subject matter jurisdiction generally cannot be conferred by waiver and because the family code permits Juli to bring this issue via her petition for writ of mandamus, it is properly before us.  
See, e.g., Dubai Petroleum Co. v. Kazi
, 12 S.W.3d 71, 76 (Tex. 2000) (recognizing that subject matter jurisdiction generally cannot be conferred upon any court by waiver).

5:
At the time of the hearing, Juli was based in Dallas, Texas, and Keith was based in St. Louis, Missouri.  

6:
However, Keith also testified that he spent about sixty to seventy nights in the Euless home in the past six months, although Juli disagreed and testified that he probably spent twenty to thirty nights there “at the most.”  

7:
Because Texas prioritizes home-state jurisdiction over jurisdiction predicated on significant connections, we do not address Kodi’s obvious connections to Texas.  
See In re Calderon-Garza
, 81 S.W.3d 899, 904 (Tex. App.—El Paso 2002, orig. proceeding).

8:
We note that Juli also argues that, even if the Texas trial court has jurisdiction, the court should have applied section 152.208 of the Texas version of the UCCJEA, which mandates that the court shall decline to exercise its jurisdiction if a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct.  
See
 
Tex. Fam. Code Ann. 
§ 152.208(a).  Keith went to Missouri and took the children from Georgina’s care the night before the Texas trial court’s hearing on June 29, 2006, and an Amber Alert was issued for the children that night; Keith arrived at the Texas courthouse on June 29 with the children.  However, the record before this court does not include sufficient facts to conclusively establish Juli’s allegation that Keith’s “conduct was an attempt to place the children in Texas so as to bring them before the court to support his claim of Texas jurisdiction.”  Thus, we cannot say that the Tarrant County trial court abused its discretion by denying Juli’s motion to abate its proceedings on section 152.208(a) grounds.  
See id.
; 
Presley
, 166 S.W.3d at 869.