**Paul Henry KOESTER, Relator**

v.

**The Honorable John D. MONTGOMERY, Judge of the 309th District Court of Harris County, Texas, Respondent.**

No. 01–94–00715–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 8, 1994.

Rehearing Overruled Oct. 13, 1994.

Bill de la Garza and Pamela E. George, Houston, for relator.

R. Scott Williams, Houston, for respondent.

Before MIRABAL, DUGGAN and WILSON, JJ.

## OPINION

MIRABAL, Justice.

This is an original mandamus proceeding. Relator, Paul Henry Koester, has petitioned this Court for a writ of mandamus to compel respondent, Honorable John D. Montgomery, to abate a divorce proceeding and child custody matter currently pending in his court. Relator contends respondent's court has no jurisdiction to hear the case because a simultaneous divorce and custody proceeding between the same parties was filed first, and is currently pending, in a Venezuelan court. We deny the writ.

Relator (Paul) and the real party in interest (Lisa) met in Venezuela. In 1985, they were married in Texas, and then moved to Venezuela to live. In 1987, their first child, Amanda, was born in Venezuela. A second child, Colin, was born in Venezuela in 1990.

Paul, Lisa, and the children traveled frequently between their home in Venezuela and a home owned by Paul's employer, but maintained by Paul, in Houston, Texas. Lisa testified that she and Paul had intended to move to Texas when the children were old enough to begin school, but that Paul had grown reluctant to do so. The problems between Lisa and Paul grew, and culminated in Lisa moving with the children to Texas in August of 1993.

Paul followed Lisa to Texas, and the two apparently tried to work out their problems. However, in October 1993, without Lisa's knowledge, Paul filed for divorce in Venezuela. On November 5, 1993, the court in Venezuela entered an order granting temporary custody of the children to Paul. Despite

filing the divorce petition, Paul remained in Texas. While in Texas, Paul lived in a home owned by his parents that was located very near the home occupied by Lisa and the children.

In December 1993, Lisa returned to Venezuela for a short time; the children remained in Texas with Paul. While Lisa was gone, Paul apparently decided that the marriage was unworkable, took the children, and returned to Venezuela.

It was also during the trip to Venezuela in December of 1993 that Lisa learned for the first time that Paul had filed for divorce in Venezuela, and obtained custody of the children. She learned of the divorce proceeding when Paul attempted to serve her with the divorce papers at the Venezuelan airport. After Lisa learned of the divorce proceeding filed by Paul in Venezuela, she returned to Texas and filed for divorce in January 1994.

After Lisa filed for divorce in Texas, Paul filed a plea in abatement because of the pendency of the Venezuelan action. Paul further argued that the Texas court had no subject matter jurisdiction to determine any issues relating to the children. Specifically, Paul contended that Venezuela was the children's home state under the Uniform Child Custody Jurisdiction Act (UCCJA), and that under the provisions of that act, the home state of the children has exclusive jurisdiction in child custody matters. *See* Tex.Fam. Code Ann. § 11.53 (Vernon 1986).

After a hearing, the trial court denied Paul's plea in abatement. Paul asks this Court to issue a writ of mandamus directing the trial court to defer to the jurisdiction of the Venezuelan court.

 We begin by noting that mandamus is an extraordinary remedy. *Callahan v. Giles*, 137 Tex. 571, 155 S.W.2d 793, 795 (1941). The writ will not issue unless relator can show a clear abuse of discretion. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). The trial court abuses its discretion when its action is "so arbitrary

and unreasonable as to be a clear and prejudicial error of law." *Id.*

Paul contends that under the Texas version of the UCCJA, respondent's court has no jurisdiction over any of the child custody matters because Venezuela is the children's home state. The first question this Court must decide is whether the UCCJA applies to the Venezuelan proceeding. Section 11.73 of the UCCJA provides:

> The general policies of this subchapter extend to the international area. The provisions of this subchapter relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations *if reasonable notice and opportunity to be heard were given to all affected persons.*

Tex.Fam.Code Ann. § 11.73 (Vernon 1986) (emphasis added).

 Therefore, under the terms of the Act, the UCCJA will apply to foreign proceedings if basic due process notions of notice are followed. In *Garza v. Harney*, 726 S.W.2d 198, 200 (Tex.App.—Amarillo 1987, orig. proceeding), the court concluded that the UCCJA was applicable to a Mexican proceeding because the evidence showed that both parties had voluntarily appeared in the Mexican court and basic due process had been followed. *Id.*

 However, in this case, Rebeca del Gallego de Machado, a lawyer from Venezuela, gave expert testimony that Lisa had never been properly served in the Venezuelan action, and that the action was thus a nullity. She also testified that the order of November 5, 1993, which granted temporary custody of the children to Paul, was entered ex parte. Paul confirmed this fact by testifying that neither he nor Lisa were present when the Venezuelan court entered the temporary custody order.[1] Del Gallego de Machado also

---

1. We are aware that since the date of the hearing on the plea in abatement, Lisa has made an appearance in the Venezuelan action, and apparently obtained visitation rights in Venezuela.

However, even if the Venezuelan action is no longer a nullity, that does not affect the issue of whether it was a nullity at the time Lisa filed divorce proceedings in Texas.

testified that it was not unusual for ex parte custody orders to be entered in Venezuela.

■ Based on the testimony of Lisa's expert on Venezuelan law, the trial court could have reasonably concluded that the Venezuelan court did not provide Lisa with reasonable notice and an opportunity to be heard. Therefore, the UCCJA would be inapplicable to Venezuelan action, and the Texas court would not be prohibited from exercising jurisdiction.

■ Furthermore, even if the UCCJA is applicable, there is evidence from which the trial court could have concluded that neither Texas nor Venezuela qualified as the childrens' home state under the UCCJA. "Home state" is defined as:

[T]he state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months.... Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

TEX.FAM.CODE ANN. § 11.52(5) (Vernon 1986). A state may exercise jurisdiction over the children if the state:

(A) is the home state of the child on the date of the commencement of the proceeding; or,

(B) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from the state because of his removal or retention by a person claiming his custody or for other reasons, *and a parent or person acting as parent continues to live in the former home state.*

TEX.FAM.CODE ANN. § 11.53(a)(1) (Vernon 1986) (emphasis added).

Texas clearly did not qualify as the childrens' home state under these provisions because the children had not lived in Texas for the six-month period immediately preceding the filing of the action in Texas in January 1994.

■ Although Venezuela may have been the childrens' home state within six months before the Venezuelan action was filed, and the children had been removed from Venezuela by their mother, Venezuela could not exercise jurisdiction under this section because, at the time the Venezuela action was filed in October 1993, both Paul and Lisa were living in Texas. In fact, the evidence shows that both Paul and Lisa lived in Texas from August 1993 until December of 1993, when Paul took the children and returned to Venezuela.

■ Therefore, the trial court did not abuse its discretion because there was evidence from which the court could have concluded that neither Texas nor Venezuela could exercise jurisdiction as the home state under section 11.53(a)(1).

■ In the absence of "home state" jurisdiction under section 11.53(a)(1), a state with significant connections to the child may exercise jurisdiction under section 11.53(a)(2). There is evidence from which the trial court could have properly concluded that both Texas and Venezuela could exercise jurisdiction under this section. The record is replete with contacts with both Texas and Venezuela.

■ We are aware that the Venezuelan action was filed first. The Act provides that a state may not exercise jurisdiction, if at the time the petition is filed, another proceeding concerning the custody of the child was pending in another state, and the other state was *"exercising jurisdiction substantially in conformity with this subchapter."* TEX.FAM. CODE ANN. § 11.56 (Vernon 1986). Therefore, if the Venezuelan court was exercising jurisdiction in substantial conformity with the UCCJA, Texas would be prohibited from exercising its own concurrent jurisdiction.

The UCCJA requires that all contestants be given reasonable notice and an opportunity to be heard. TEX.FAM.CODE ANN. § 11.54 (Vernon 1986). In light of our discussion above regarding the possible nullity of the Venezuelan action, the trial court could have reasonably concluded that Venezuela was not exercising jurisdiction in substantial conformity with the UCCJA. In such a case, Texas would not be prohibited from exercising its jurisdiction over the matter.

Because we have decided the trial court had a reasonable basis for finding that his court had jurisdiction over the matter, we cannot conclude that the trial court's denial of relator's plea in abatement was a clear and prejudicial error of law.

The writ of mandamus is denied.