**Benjamin Franklin McGUIRE,
Appellant,**

v.

**Giovanna Dionne McGUIRE, Appellee.**

No. 08–99–00343–CV.

Court of Appeals of Texas,
El Paso.

March 30, 2000.

Larry Zinn, San Antonio, Marc R. May, Attorney at Law, Odessa, for Appellant.

Rhett Hoestenbach, John Hoestenbach, Odessa, for Appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

This case presents a classic example of the deficiencies of the Uniform Child Custody Jurisdiction Act (UCCJA) that gave rise to the recent adoption by the Texas Legislature of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). The district court entered a default judgment modifying a joint managing conservatorship. Because the uncontro-verted evidence establishes that the child and his primary managing conservator had established a new home state under the former UCCJA, we reverse and render.

## SUMMARY OF THE EVIDENCE

Ben and Giovanna McGuire were divorced in Ector County in 1996 and named joint managing conservators of their four-year-old son, Spencer. The divorce decree granted Ben primary custody with the exclusive right to establish Spencer's legal residence and domicile. Giovanna was granted possession at all times as the parties may mutually agree, and failing that, pursuant to a standard possession order incorporated in the decree. In December 1996, Ben and Spencer moved to Illinois. In August 1998, Giovanna began to have difficulty with Ben concerning her visitation with Spencer. The problems continued for several months and escalated to the point that Giovanna sought a modification in Texas while Ben filed suit in Illinois.[1] Giovanna's motion sought to modify the decree to include provisions to facilitate Spencer's visitation with his mother via air travel. Ben's suit requested an increase in child support, a modification of visitation, and the requirement of supervised visitation in Kane County, Illinois. Giovanna responded to the Illinois suit and filed a motion requesting a judicial conference pursuant to the UCCJA and a motion to dismiss for want of jurisdiction.

Giovanna tried several times to serve Ben with process, albeit unsuccessfully. In her third amended petition, she requested that the court authorize substituted service, revoke the joint managing conservatorship, and appoint her as sole managing conservator. Substituted service was eventually effectuated on June 9, 1999 by leaving a copy of the citation and petition attached to the door of Ben's residence. Ben admittedly found the citation and petition, looked them over, and put

---

1. Giovanna filed her petition in Texas on December 3, 1998; however the petition did not request service on Ben. Ben filed his petition in Illinois on December 4, 1998, and Giovanna was served on December 9.

them away. He did not respond to the Texas lawsuit because he believed that everything should be filed in Illinois.

On June 27, 1999, Giovanna's father drove to Illinois, picked up Spencer, and brought him back to Odessa for summer visitation with his mother. On July 6, 1999, the trial court entered a default judgment against Ben. Finding that it had continuing jurisdiction over the case, the trial court revoked the joint managing conservatorship, appointed Giovanna sole managing conservator, and appointed Ben possessory conservator with visitation pursuant to a standard possession order. Ben filed a motion for new trial on August 4, 1999. Following an evidentiary hearing, the motion was overruled on September 1, 1999. This appeal follows.

## SUBJECT MATTER JURISDICTION

The first of three appellate issues presented is whether the trial court lacked subject matter jurisdiction to modify custody. Because it is dispositive of our decision, we need not address the remainder.

### *Elements of Jurisdiction*

 Generally, there are three jurisdictional elements: (1) jurisdiction over the subject matter; (2) jurisdiction over the person or *res;* and (3) power to render the particular relief awarded. *City of El Paso v. Madero Development,* 803 S.W.2d 396, 399 (Tex.App.—El Paso 1991, writ denied), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992). Subject matter jurisdiction exists when the nature of the case falls within a general category of cases the court is empowered, under applicable statutory and constitutional provisions, to adjudicate. *Bullock v. Briggs,* 623 S.W.2d 508 (Tex.App.—Austin 1981, writ ref'd n.r.e.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2962, 73 L.Ed.2d 1352 (1982). It is essential to the authority of a court to decide a case. *Texas Ass'n of*

Business v. Texas Air Control Board, 852 S.W.2d 440, 443 (Tex.1993). Lack of subject matter jurisdiction will arrest a cause at any stage of the proceedings. *Madero Development,* 803 S.W.2d at 400. Because the question of subject matter jurisdiction is a legal question, we review the trial court's ruling under a *de novo* standard. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).[2]

### *Waiver*

 Subject matter jurisdiction is never presumed and cannot be waived. *Texas Ass'n of Business,* 852 S.W.2d at 443–44; *Gonzalez v. Sanchez,* 927 S.W.2d 218, 221 (Tex.App.—El Paso 1996, no writ); *Abderholden v. Morizot,* 856 S.W.2d 829, 832 (Tex.App.—Austin 1993, no writ); *Madero Development,* 803 S.W.2d at 400; *Armstrong v. West Texas Rig Company,* 339 S.W.2d 69, 71 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r.e.). Despite these well settled principles, Giovanna contends that Ben waived his jurisdictional complaint when he filed his motion for new trial. This argument confuses personal jurisdiction with subject matter jurisdiction. *See CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996)(explaining personal jurisdiction). Personal jurisdiction can certainly be waived when it is not properly contested. *See* Tex.R.Civ.P. 120a; *Texas Ass'n of Business,* 852 S.W.2d at 444 n. 5. By failing to file a special appearance, Ben has waived the issue of personal jurisdiction. *See Liberty Enterprises, Inc. v. Moore Transportation Company, Inc.,* 690 S.W.2d 570, 571–72 (Tex.1985)(any effort by nonresident to invoke judicial powers of Texas court in an attempt to set aside a default judgment constitutes a general appearance); *Bruneio v. Bruneio,* 890 S.W.2d 150, 154 (Tex.App.—Corpus Christi 1994, no writ)(holding that failure to follow special appearance procedure

**2.** We apply a different standard, however, upon review of a trial court's refusal to exercise jurisdiction in a suit affecting the parent-child relationship. For example, where a trial court declines to exercise jurisdiction on the basis of *forum non conveniens,* we apply an abuse of discretion standard. *Coots v. Leonard,* 959 S.W.2d 299, 301 (Tex.App.—El Paso 1997, no pet.).

waives the issue of personal jurisdiction). However, the issue of subject matter jurisdiction cannot be waived and, thus, Ben may raise it for the first time on appeal. *Texas Ass'n of Business*, 852 S.W.2d at 443–44; *Gonzalez*, 927 S.W.2d at 221; *Abderholden*, 856 S.W.2d at 832; *Madero Development*, 803 S.W.2d at 400; *Armstrong*, 339 S.W.2d at 71.

### The UCCJA Applies

■ Texas enacted the UCCJA in 1983. The clear purpose of the Act is to discourage and eliminate child snatching, to avoid jurisdictional competition, to avoid continued relitigation of custody decisions, and to promote cooperation between the states to ensure that a custody decision is rendered in the state that can better determine the best interest of the child. TEX.FAM.CODE ANN. § 152.001 (Vernon 1996). Jurisdiction to enter a child custody determination arises from one of four sources:

• Texas is the home state of the child as of the date suit is commenced or had been the child's home state within six months of filing, the child was removed by a person claiming custody and a parent or person acting as a parent continues to live in Texas.

• It appears that no other state would have home state jurisdiction and it is in the best interest of the child that Texas assume jurisdiction because the child and at least one contestant have a significant connection with Texas other than mere physical presence, and there is available substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

• The child is present in Texas and has been abandoned or it is necessary to protect the child in an emergency because the child has been subjected to or threatened with abuse or is otherwise neglected or there is a serious and immediate question concerning the welfare of the child.

• It is in the best interest of the child that Texas assume jurisdiction and it

appears that no other state would have jurisdiction under the first three prongs or another state has declined to exercise jurisdiction on the ground that Texas is the more appropriate forum.

■ Further, "[e]xcept on written agreement of all the parties, a court may not exercise its continuing jurisdiction to modify *custody* if the child and the party with custody have established another home state unless the action to modify was filed before the new home state was acquired." [Emphasis added.] TEX.FAM. CODE ANN. § 152.003(d). Perhaps not surprisingly, litigation has arisen concerning the highlighted word "custody" and what it encompasses. To answer this question, two definitional distinctions are appropriate. The phrase "custody determination" as used in the hierarchy of jurisdiction is defined as a court decision providing for the custody of a child, including visitation rights. TEX.FAM.CODE ANN. § 152.002(3). "Custody," however, is defined as managing conservatorship of a child. TEX.FAM. CODE ANN. § 152.002(2). Thus, for purposes of the ability of a trial court to exercise its continuing jurisdiction to modify a prior order, custody and visitation are treated differently.

The Texas version of the UCCJA differs significantly from the Uniform Act. The statute enacted in the majority of states does not prioritize "home state" jurisdiction over the "significant connection" test. One commentary has noted that:

Because these two provisions are of equal rank under the UCCJA, the priority to decide the issue of custody between two states with concurrent jurisdiction is determined by the first filing. Unfortunately the uniform act does not conform to the preemptive federal act on the subject—the Parental Kidnapping Prevention Act of 1980 (PKPA) 28 U.S.C.A. § 1738A, which accords 'home state' priority for full faith and credit recognition. The Texas version of the UCCJA conforms to the PKPA; the home state is preferred and is superior

to a 'significant connection' state. Only if a home state does not exist or declines jurisdiction will the significant connection ground prevail.

. . .

Subsection (d) is the second major Texas variation on the uniform text. It establishes a restriction on the exercise of jurisdiction to modify custody (managing conservatorship) after a child has acquired a new home state. Although the Texas court that rendered the original SAPCR order is restrained from modifying managing conservatorship, it retains continuing jurisdiction over the terms of possessory conservatorship (and over the child support order) so long as one contestant remains in Texas....

Sampson & Tindall, TEXAS FAMILY CODE ANNOTATED § 152.003 (1998).

■■ Over the years, the "inconsistency of interpretation of the UCCJA and the technicalities of applying the PKPA, resulted in a loss of uniformity among the States." Sampson & Tindall, TEXAS FAMILY CODE ANNOTATED § 152.001, *Introductory Comment,* p. 410 (1999). As a result, the National Conference of Commissioners on Uniform State Law adopted the UCCJEA in 1997. Effective September 1, 1999, the Texas Legislature adopted the UCCJEA, thereby replacing the UCCJA. The new act applies to any suit affecting the parent-child relationship, including modifications, filed on or after September 1, 1999. *See* Act of May 6, 1999, 76th Leg., R.S., ch. 34, 1999 Tex.Sess.Law Serv. 1 (Vernon)(to be codified as TEX.FAM.CODE ANN. Ch. 152). Suits pending as of September 1, 1999 are governed by the former law. *Id.* The trial court below granted relief on Giovanna's third amended petition, which was filed on April 27, 1999. Because this request for relief was made before the effective date of the UCCJEA, the UCCJA applies. *See In re Alley,* 1 S.W.3d 268, 271 (Tex.App.—Texarkana 1999, no pet.)(stating general rule that jurisdiction attaches at the time the proceeding is filed).

Before beginning our analysis of the matter before us, we join Sampson & Tindall in their caution that "[c]ase law under the former Texas version of the Uniform Child Custody Jurisdiction Act regarding continuing jurisdiction will have little, if any, precedent value under the new act." Sampson & Tindall, TEXAS FAMILY CODE ANNOTATED § 152.001, *Introductory Comment,* p. 408 (1999). Consequently, the result reached in this case should in no way be interpreted as the result which would arise from applying the UCCJEA in the event of future litigation concerning Spencer.

### Continuing, Exclusive Jurisdiction

We have already outlined the statutory framework which governs our decision. In order for the trial court to exercise its continuing, exclusive jurisdiction under the UCCJA, Texas must have been Spencer's home state at the time suit was filed, the modification must have been filed before Spencer obtained a new home state, or the parties must have agreed in writing to the exercise of the trial court's jurisdiction. *See* TEX.FAM.CODE ANN. § 152.003(d); *Phillips v. Beaber,* 995 S.W.2d 655, 661 (Tex. 1999).

■■ Turning now to the record, the uncontroverted evidence reveals that Spencer moved to Illinois, in December 1996 and resided there with Ben until June 1999 when he was brought to Texas by his grandfather. Illinois was Spencer's home state at the time Giovanna filed her motion to modify. The record does not indicate that the parties signed a written agreement of the parties pursuant to § 152.003(d). We therefore conclude that the trial court lacked the authority to exercise its continuing jurisdiction. *See* TEX. FAM.CODE ANN. § 155.003(b)(Vernon 1996) and TEX.FAM.CODE ANN. § 152.003(d); *Beaber,* 995 S.W.2d at 659; *Coots,* 959 S.W.2d at 302–03.

### Jurisdiction Declined by Illinois

Giovanna counters that the trial court had jurisdiction pursuant to § 152.003(a)(4)(B), because the Illinois court declined to exercise jurisdiction. The Illinois court tried on several occasions to contact the Texas court concerning Spencer, but the Texas court did not respond. The record does not reveal the reason the trial court failed to communicate with the Illinois court, and it is particularly troublesome given that the affidavit filed by Giovanna in support of her modification acknowledged that there was a simultaneous proceeding pending in Illinois.[3] After receiving news that the Texas court had entered an order modifying custody, the Illinois court declined to exercise jurisdiction over the case. Section 152.003(a)(4)(B) provides that a court has jurisdiction to modify a custody determination if "it is in the best interest of the child ... and ... another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child." Tex. Fam.Code Ann. § 152.003(a)(4)(B).

We conclude that § 152.003(d), not § 152.003(a)(4)(B), controls. First, § 152.003(d) specifically prohibits a trial court from exercising its continuing jurisdiction to modify custody when the child establishes a new home state. *See Beaber*, 995 S.W.2d at 658–59 (noting that the Legislature intentionally departed from the model UCCJA by enacting § 152.003(d)). Second, and more importantly, the Illinois court did not decline jurisdiction because Texas would be a more appropriate forum to determine custody. It declined jurisdiction because the Texas court had *already issued* a custody determination, an out-

come the Illinois court intended to prevent or forestall by virtue of its attempts at communication. Finally, as a matter of policy, we cannot sanction the "bootstrapping" of jurisdiction onto a court which fails in its duty to communicate with a sister state.

We conclude that the trial court lacked subject matter jurisdiction to modify the joint managing conservatorship. Accordingly, Ben's first issue is sustained, the trial court's order is vacated, and Giovanna's suit to modify custody is dismissed for want of jurisdiction. We deny Ben's parenthetical request that we order Spencer returned to him, as that relief is appropriately addressed in a writ of habeas corpus proceeding.

---

**3.** We pause to note that one of the specific purposes of the UCCJA was to "promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child." *See* Tex.Fam. Code Ann. § 152.001(a)(8). Indeed, the Family Code requires that before conducting a hearing, the Texas court "shall examine the pleadings and other information supplied by the parties ... and shall consult the child

custody registry ... concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state, it shall direct an inquiry to the state court administrator or other appropriate official of the other state." Tex.Fam.Code Ann. § 152.006(b). The pleadings and supporting affidavit here provided the necessary information to trigger the duty to contact the Illinois court.