COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )     

                                                                              )                    No. 
08-01-00054-CV

                                                                              )

IN
THE INTEREST OF                                        )                             Appeal from

                                                                              )     

KAYLEE LYNN-MARIE BRILLIANT,               )                       65th District Court

                                                                              )

A Child.                                                                 )                 of El Paso County, Texas

                                                                              )

                                                                              )                 (TC# 2000-CVM-4684)

 

 

O
P I N I O N

 

This
appeal centers on the recently adopted Uniform Child Custody Jurisdiction and
Enforcement Act.  Mother, father, and
child are former residents of Massachusetts, all of whom relocated to Texas.  When the mother expressed her intent to
return to Massachusetts, the father filed suit and obtained a temporary
restraining order prohibiting the removal of the child from the jurisdiction of
the court.  Although she was duly served,
the mother left Texas with the child and returned to Massachusetts, later claiming
that her relocation to Texas was merely a temporary absence.  The trial court denied the mother=s plea to the jurisdiction and
subsequently entered a default judgment naming the father as sole managing
conservator.  We conclude that Texas has
jurisdiction under the UCCJEA, but we reverse the default judgment and remand
for a trial on the merits.








FACTUAL SUMMARY

Kaylee Lynn-Marie Brilliant was born in Massachusetts on
June 15, 1999.  She was conceived when
her mother, Kristen Lynn Fox (Kristen), was a seventeen-year-old high school
student.  Reginald Brilliant (Regi) is Kaylee=s father but he and Kristen have never
married.  Kristen moved in with Regi in March 1999 and they continued living together until
April 16, 2000, when Regi moved to Texas.  Regi grew up in El
Paso and his family continued to live here. 
The record reveals that the couple had planned to relocate to El Paso
and Regi, an employee of Home Depot, requested a job
transfer.  When the transfer came
through, Regi loaded a U-Haul truck with all of his
new family=s
belongings, except for the clothing Kristen needed to finish the last two
months of high school.  During their
brief separation, Kristen lived with her mother and wrote letters in which she
told Regi she was anxious Ato
start my new life down there with you.@  As planned, Kristen and Kaylee
arrived in El Paso on June 12.  

On
June 15, 2000, Kristen completed and signed a rental application adding her
name to the lease on their apartment. 
She filled out job applications with Blockbuster and Payless ShoeSource, although neither of these is signed nor
dated.  Kaylee=s immunization records were transferred
to an El Paso clinic and Regi discovered that the
child=s shots
had not been kept current.  While the
record does not indicate when the parties applied for a social security card in
Kaylee=s
name, the Social Security Administration mailed Kaylee=s card--postmarked April 1, 2000--to Regi=s
father=s home in
El Paso.  








Kristen
soon expressed displeasure with Texas. 
She wrote Regi a letter on July 10, telling
him Athat it
just wasn=t
working out, she was leaving, she and the baby were
going back to Massachusetts.@  Regi filed suit on
July 19 and on July 21, he obtained a temporary restraining order preventing
Kristen from removing Kaylee from El Paso
County.  Kristen was served with the
restraining order on July 22 but she did not move out of the couple=s apartment until July 24, when her
mother arrived in town.  Kristen and Kaylee stayed in the motel with Kristen=s mother until July 27, when all
three of them left El Paso for Massachusetts in violation of the restraining
order.  Kristen and Kaylee
spent a total of forty-five days in Texas.

Kristen
filed a paternity suit in Massachusetts on August 3.  She did not file an answer in the Texas suit
but instead filed a plea to the jurisdiction on August 7.  On August 16, she filed an amended plea to
the jurisdiction to which she attached her own affidavit and a certified copy
of a letter from the Massachusetts court to the associate judge of the El Paso
court.  A hearing on the plea proceeded
before the associate judge on August 9 and Kristen appealed the adverse ruling
to the referring court.  The de novo
hearing before the Honorable Alfredo Chavez took place on August 18.  Kristen did not appear for the hearing.  Judge Chavez ultimately denied the plea.  On October 26, Kristen, represented by new
counsel, urged a motion for new trial and, in the alternative, a motion for
reconsideration.  Again, Kristen did not
appear.  In denying the relief requested,
the trial court stated:

It=s this
Court=s opinion
that Texas had jurisdiction over the case at that time.  To grant the new trial and to decline
jurisdiction, even on an inconvenient forum basis would be to condone the
blatant disregard for court orders by the respondent, which highly disturbs
this Court.  And I=m not going to do that.








The
following day, Regi and his attorney appeared before
Judge Chavez.  They advised the court
that the two attorneys who had represented Kristen had been employed solely for
the purpose of pursuing the plea to the jurisdiction and Kristen, having failed
to file an answer, was in default.  Regi=s
counsel also represented that she had advised Kristen=s
attorney following the hearing on the motion for new trial that she intended to
pursue a default judgment the next day. 
Neither counsel nor Kristen appeared. 
The court found that it had jurisdiction of the cause and of the
parties, that all persons entitled to citation were properly cited, that a jury
was waived, and that a record was taken. 
He appointed Regi as sole managing conservator
of Kaylee, appointed Kristen as possessory
conservator and entered a standard possession order.  Child support was fixed at $150 per
month.  From this order, Kristen brings
two issues for review:  (1) Texas lacked
subject matter jurisdiction to make an initial child custody determination
under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA); and
(2) the default judgment was improper because Kristen did not receive
forty-five days= notice
of the trial setting.

STANDARD OF REVIEW








A
plea to the jurisdiction is a dilatory plea by which a party contests the trial
court=s
authority to determine the subject matter of the cause of action.  See, e.g., State v.
Benavides, 772 S.W.2d 271, 273 (Tex.App.--Corpus
Christi 1989, writ denied).  The
petitioner has the burden to allege facts that affirmatively show the trial
court has subject matter jurisdiction.  See
Texas Ass=n of Bus.
v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).  A respondent may assert in the plea that
another court has exclusive jurisdiction or that the petitioner has made
fraudulent allegations for the purpose of conferring jurisdiction.  See  Michol O=Connor,
O=Connor=s Texas Rules * Civil Trials 2002, Commentaries
175, 176-77 (2002).  Subject matter
jurisdiction presents a question of law which we review de novo.  Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998), cert. denied, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).  In deciding whether to grant or deny a plea
to the jurisdiction, the court need not look solely to the pleadings but may
consider evidence and must do so when necessary to resolve the jurisdictional
issues raised.  Bland ISD v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).  Where the pleadings do not affirmatively
demonstrate an absence of jurisdiction, a liberal construction of the pleadings
in favor of jurisdiction is appropriate. 
Continental Coffee Products Co. v. Cazarez,
937 S.W.2d 444, 449 (Tex. 1996); Peek v. Equipment  Service Co. of San Antonio, 779
S.W.2d 802, 804 (Tex. 1989).  

UNIFORM CHILD CUSTODY JURISDICTION AND ENFORCEMENT
ACT

In
her first issue for review, Kristen contends that the trial court lacked
subject matter jurisdiction to make an initial child custody
determination.  Generally, there are
three jurisdictional elements:  (1)
jurisdiction over the subject matter; (2) jurisdiction over the person or res; and (3) power to render the particular relief
awarded.  City of El Paso v. Madero Development, 803 S.W.2d 396, 399 (Tex.App.--El Paso 1991, writ denied), cert. denied,
502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135
(1992).  Subject matter jurisdiction is
essential to the authority of a court to decide a case; it is never presumed
and cannot be waived.  Tex. Ass=n of Business, 852
S.W.2d at 446.








Jurisdiction
here is predicated upon the UCCJEA which Texas adopted effective
September 1, 1999.  The Act was
designed to address the Ainconsistency
of interpretation of the [former] UCCJA and the technicalities of applying the
PKPA.@[1]  McGuire v. McGuire,
18 S.W.3d 801, 806 (Tex.App.--El Paso 2000, no pet.),
citing Sampson & Tindall, Texas Family Code Annotated ' 152.001, Introductory Comment,
p. 410 (1999).  The new act
prioritizes home state jurisdiction. 
Sampson & Tindall, Texas Family Code Annotated '
152.001, Commissioners=
Official Prefatory Note to UCCJEA  p. 464
(2001).  The clear purpose of the UCCJEA,
like that of the former UCCJA, is to discourage and eliminate child snatching,
to avoid jurisdictional competition, to avoid continued relitigation
of custody decisions, and to promote cooperation between the states to ensure
that a custody decision is rendered in the state that can better determine the
best interest of the child.

Home State

AHome state@
is defined in the Act:

(7)
>Home state=
means the state in which a child lived with a parent or a person acting as a
parent for at least six consecutive months immediately before the commencement
of a child custody proceeding.  In the
case of a child less than six months of age, the term means the state in which
the child lived from birth with a parent or a person acting as a parent.  A period of temporary absence of a parent or
a person acting as a parent is part of the period.

Tex.Fam.Code Ann. ' 152.102(7)(Vernon
Supp. 2002).  In turn, Acommencement@
as used in the definition Ameans
the filing of the first pleading in a proceeding.@  Tex.Fam.Code Ann. ' 152.102(5).  Commentary suggests that although the
definition of Ahome
state@ has been
reworded slightly, no substantive change from the UCCJA was intended.  Sampson & Tindall,
Texas Family Code Annotated ' 152.102, Commissioners= Comment p. 470 (2001).

Section
152.201 provides the hierarchy for determining whether a state has jurisdiction
to make an initial child custody determination: 

' 152.201.  Initial Child Custody Jurisdiction

(a) Except as
otherwise provided in Section 152.204, a court of this state has jurisdiction
to make an initial child custody determination only if:

 








(1) this state is
the home state of the child on the date of the commencement of the proceeding,[2]
or was the home state of the child within six months before the commencement of
the proceeding and the child is absent from this state but a parent or person
acting as a parent continues to live in this state;

 

(2) a court of
another state does not have jurisdiction under Subdivision (1), or a court of
the home state of the child has declined to exercise jurisdiction on the ground
that this state is the more appropriate forum under Section 152.207 or 152.208,
and:

 

(A) the child and the child=s
parents, or the child and at least one parent or a person acting as a parent,
have a significant connection with this state other than mere physical
presence; and

 

(B) substantial evidence is available in this state concerning
the child=s care,
protection, training, and personal relationships;

 

(3) all courts
having jurisdiction under Subdivision (1) or (2) have declined to exercise
jurisdiction on the ground that a court of this state is the more appropriate
forum to determine the custody of the child under Section 152.207 or 152.208;
or

 

(4) no court of any other state would have jurisdiction under
the criteria specified in Subdivision (1), (2), or (3).              

 

Tex.Fam.Code Ann. '
152.201.  For our purposes, the
commentary is again insightful: 

 

The
six-month extended home state provision of Subsection (a)(1)
has been modified slightly from the UCCJA. 
The UCCJA provided that home state jurisdiction continued for six months
when the child had been removed by a person seeking the child=s custody or for other reasons and a
parent or a person acting as a parent continues to reside in the home
state.  Under this Act, it is no longer
necessary to determine why the child has been removed.  The only inquiry relates to the status of the
person left behind.  This change provides
a slightly more refined home state standard than the UCCJA or the PKPA, which
also requires a determination that the child has been removed >by a contestant or for other
reasons.=

 

Sampson
& Tindall, Texas
Family Code Annotated '
152.201, Commissioners= Comment p. 478 (2001).

Framing the
Issue








Both
parties agree that Texas was not Kaylee=s home state as she had not resided
here for the requisite six month period. 
Kristen contends that Massachusetts has home state status
because her 45-day residence in Texas was merely a Atemporary
absence@ as that
term is used in Section 152.102(7).  Regi contends that Kristen Amoved@ from Massachusetts to Texas so that no
parent continued to live in Massachusetts; consequently, neither Texas nor
Massachusetts has home state jurisdiction and Texas may assert Asignificant connections@ jurisdiction under Section
152.201(a)(2)(A).  We must first consider
the meaning of Atemporary
absence.@

Temporary
Absence








Kristen
claims that she is not and never was a resident of the State of Texas, nor was
their daughter.  She contends that a
temporary absence from the home state does not constitute new residency when
the stay is less than six months.  We
begin with a review of five relevant decisions which have addressed the issue,
starting with Huffstutlar v. Koons, 789 S.W.2d 707 (Tex.App.--Dallas
1990, orig. proceeding), to which Kristen directs our attention.  The Huffstutlars
were divorced in Texas in 1982 and Lynette was appointed the managing
conservator of Kimberly.  Lynette and
Kimberly moved to Oklahoma shortly after the divorce.  On September 26, 1986, Larry went to Oklahoma
and picked up Kimberly, although the parties told drastically different stories
as to the reason why; Lynette claimed Larry abducted the child while Larry
claimed Lynette had called him and asked him to take Kimberly.  On October 8, 1986, Larry filed a motion to
modify custody.  Lynette appeared at a
hearing on October 16, and the parties agreed to a continuance pending a home
study, with Kimberly remaining with Larry in the interim.  On December 23, Lynette took Kimberly back to
Oklahoma.[3]  She later moved with the child to Arizona
without telling Larry where they had gone. 
Ultimately, on January 5, 1987, Judge Koons
modified the decree and appointed Larry managing conservator of the child.[4]  Lynette was arrested in Arizona on March 14,
1989 on a fugitive warrant for interfering with a child custody order.  She was returned to Texas.  On August 9, 1989, she filed an application
for writ of habeas corpus contending that the modification order was void and
that she was entitled to possession of Kimberly by virtue of the original
decree of divorce.  The trial court
denied habeas relief, finding that although Oklahoma had been the home state of
the child, the residence was terminated when Lynette voluntarily sent the child
back to Texas with Larry.  It further
found that Texas had become the home state of the child by virtue of voluntary
abandonment of home state jurisdiction in Oklahoma.  Lynette sought a writ of mandamus.  The court of appeals granted relief,
concluding that the trial court lacked subject matter jurisdiction because
voluntary abandonment of home state status was not a proper basis for
determining Kimberly=s
home state under Texas law and Texas had not become Kimberly=s home state since she had not lived
here the requisite time.  Huffstutlar, 789 S.W.2d at 711.  We find it noteworthy that in Huffstutlar, Lynette continued to reside in
Oklahoma.








Proceeding
with our analysis of these decisions in chronological order, we turn next to Koester
v. Montgomery, 886 S.W.2d 432 (Tex.App.--Houston
[1st Dist.] 1994, orig. proceeding).  In
1985, the Koesters met in Venezuela, married in
Texas, and then returned to Venezuela to live. 
Their two children were born there. 
During the marriage, the family traveled frequently between their home
in Venezuela and Houston, Texas.  By
August 1993, problems had developed and Lisa moved with the children to
Texas.  Paul followed and the couple
tried to work out their differences.  In
October 1993, however, Paul filed suit for divorce in Venezuela without Lisa=s knowledge.  On November 5, 1993, the court there entered
an order granting temporary custody of the children to Paul.  Despite the lawsuit, Paul, Lisa, and the
children remained in Texas.  In December
1993, Lisa returned to Venezuela briefly while the children remained in Texas
with Paul.  She learned of the divorce
action for the first time when an attempt was made to serve her with process at
the Venezuelan airport.  During this time
frame, Paul took the children and went back to Venezuela; Lisa returned to
Texas and filed for divorce in January 1994. 
Paul filed a plea in abatement in the Texas action, alleging the pendency of the Venezuelan suit.  He argued that under the former UCCJA, the
home state of the children was Venezuela. 
He sought mandamus relief when the trial court denied the plea in
abatement.  Finding first that the UCCJA
applied internationally,[5]
the appellate court determined that the Act did not apply to the Venezuelan
proceeding because the Venezuelan court did not provide Lisa with reasonable
notice and an opportunity to be heard.  Koester,
886 S.W.2d at 434-35. 
The court further noted, however, that Venezuela could not exercise home
state jurisdiction because at the time the Venezuelan suit was filed, both
parents were living in Texas.  AIn fact, the evidence shows that both
Paul and Lisa lived in Texas from August 1993 until December of 1993, when Paul
took the children and returned to Venezuela.@  Id. at 435.  Evidently, this four-month residence did not
qualify as a Atemporary
absence.@  Although Venezuela had been the children=s home state within six months before
the suit was filed there, the children had been removed from Venezuela by their
mother.  Id. at
435.  And while Texas did not
qualify as home state because the children had not lived here for the six-month
period immediately preceding the filing of the Texas divorce action, Texas
could exercise jurisdiction based on significant connections.  Id.








This
case appears to us to be the closest analogy to the case at bar.  Nevertheless, we continue our analysis with Lemley v. Miller, 932 S.W.2d 284 (Tex.App.--Austin 1996, no writ).

The
Millers were divorced in Oklahoma in February 1993, with the mother named as managing
conservator of the child.  She married
shortly after the divorce, taking her new husband=s
surname of Lemley. 
In March 1993, the Lemley family moved to
Texas.  From January-November 1995, the
family resided in Germany because of Mr. Lemley=s active military duty.  Thereafter, Mrs. Lemley
returned to Texas and on December 7, 1995, she filed suit to modify
visitation.  Miller continued to reside
in Oklahoma.  Mrs. Lemley
argued that Texas had jurisdiction because the child had lived in Bell County
for six months prior to moving to Germany, that the residence
in Germany was a temporary absence necessitated by her husband=s active military duty, and that
she and the child had returned directly to Texas from Germany.  The trial court dismissed the suit and Mrs. Lemley appealed.  In
reversing, the appellate court noted that the time in Germany constituted a
temporary absence from the state such that it was considered time that Mrs. Lemley and the child had resided in Texas for purposes of
establishing home state jurisdiction.  Lemley, 932 S.W.2d at 287.  We have previously declined to follow Lemley which we found to have improperly analyzed
jurisdiction solely under former Section 152.003(a), without reference to
either former Section 152.014 or the PKPA. 
See Coots v. Leonard, 959 S.W.2d 299, 305
(Tex.App.--El Paso 1997, no pet.).  This criticism stemmed from the court=s decision that Texas could modify
visitation provisions of the Oklahoma order. 
Coots, of course, was decided under the
former UCCJA.  Its application in UCCJEA
proceedings is doubtful.  See McGuire
v. McGuire, 18 S.W.3d 801, 806 (Tex.App.--El Paso 2000, no pet.)(case
law construing former Act regarding continuing jurisdiction will have little,
if any, application under the new Act).













Lemley played a role in the case of In re
Jeffries, 979 S.W.2d 429 (Tex.App.--Waco 1998,
orig. proceeding).  Jeffries and
Pennington were divorced in Florida in 1991 with Jeffries named as the
custodial parent.  In April 1994, she
moved to Georgia and entered into a common-law marriage.  In June 1997, after discovering that her
current husband had sexually abused her daughter, Jeffries fled to Texas,
arriving on August 7.  The child was
enrolled in school and Jeffries sought employment.  Within a week, the Texas Department of
Protective and Regulatory Services had filed suit to terminate the child=s parental rights.  At the time suit was filed, Pennington was
also residing in Texas.  In January 1998,
Jeffries returned to Florida.  The trial
court ultimately determined that the child=s
home state was Georgia and that Texas could exercise emergency jurisdiction
under former Section 152.003(a)(3)(B) of the Family
Code.  Georgia ultimately declined
jurisdiction.  In large part, the Jeffries
decision analyzes the emergency jurisdiction provisions of the former
UCCJA.  It does address, however, the
Department=s
contention that Texas was the child=s
home state because Jeffries intended to make a home in Texas, enrolled her
daughter in school, and sought employment. 
Noting first that Texas could not become home state until the child had
resided here for six months, the court then addressed the Department=s contention that Georgia could not be
the child=s home
state since she had not resided there immediately preceding the time suit was
filed.  Citing Lemley,
the appellate court concluded that Jeffries and the child had resided in Texas
only a week when suit was filed and that this brief absence from Georgia was a Atemporary absence@ as provided by statute.  We find this reasoning flawed for two
reasons.  First, in Lemley,
the time spent in Germany was attributable to Mr. Lemley=s active military duty.  In other contexts, the Family Code
contemplates that time spent by a Texas domiciliary outside Texas while in the
service of the armed forces is considered residence in Texas.  See Tex.Fam.Code Ann. ' 6.303 (Vernon 1998).  Although the UCCJEA does not contain a
similar provision, logic at least supports a conclusion that military absence
is a temporary absence.  Second, in Lemley, the mother and children had left Texas for
Germany and then returned to Texas; they were residing in Texas at the time
suit was filed.  Here, Jeffries left Georgia
for Texas and although she resided in Texas at the time suit was filed, she had
been here for one week.  Within five
months, she had left Texas, but she did not return to Georgia--she moved  back to
Florida.  We are hard-pressed to see how
the absence from Georgia could have been temporary when she never
returned.  It would appear to us that the
child had no home state; she had only lived in Texas for one week, no one was
living in Florida at the time suit was filed, and no one lived in Georgia at the
time suit was filed or thereafter.








Finally
we come to In re McCoy, 52 S.W.3d 297 (Tex.App.--Corpus
Christi 2001, orig. proceeding).  The McCoys lived most of their married life in Texas but moved
to Qatar in 1996 to accommodate Michael=s
work as a petroleum engineer.  Michelle
and the children moved to Arkansas in October 1999; Michelle filed suit for
divorce shortly thereafter.  That same
month, Michael filed suit in Qatar.  In
October 2000, the Qatar court entered a divorce decree but deferred ruling on
child custody matters on the grounds that Texas was a more appropriate
forum.  Michael filed suit in Texas on
February 2001, seeking custody of the children, a division of marital property,
and recognition of the Qatar divorce decree. 
Michelle filed a motion to dismiss for want of jurisdiction.  When her motion was denied by the trial
court, Michelle sought mandamus relief. 
In granting relief pursuant to the UCCJEA, the appellate court noted
that Texas was not the home state of the children at the time suit was filed in
Texas; in fact, the children had not lived in Texas since 1996.  Because the children had been living in
Arkansas with their mother for over a year at the time the Texas suit was
filed, Arkansas was their home state.  Id. at 303. 
The court next considered whether Texas would have jurisdiction under
Section 152.201(a)(2)(allowing Texas to exercise jurisdiction if no other state
had Ahome
state@
jurisdiction or if a court of the home state had declined to exercise
jurisdiction on the ground that Texas was the more appropriate forum and if
there were evidence of Asignificant
connections@).  Although Qatar was the home state of the
children at the time the divorce suit was filed there and at the time suit was
filed in Arkansas, it was not the home state at the time suit was filed in
Texas.  A[T]he
operative date for determining whether Texas has jurisdiction is the
date suit was filed in Texas.@  [Emphasis in original].  Id. at 304.  As for the Qatari court=s deferral to Texas, Qatar could only
defer home state status to Texas if it did so before Arkansas became the
children=s home
state.

We
are faced here with a situation in which Kristen moved from Massachusetts to
Texas.  Had she returned to Massachusetts
before suit was filed, we might be more inclined to find her absence temporary.  But at the
time suit was filed in Texas, no one lived in Massachusetts--Kristen, Regi, and Kaylee were all living
in Texas.  Although Kristen and Kaylee returned to Massachusetts, Kristen was restrained
from removing the child from El Paso County. 
She did so anyway.[6]  The UCCJEA was designed to prevent the
gamesmanship and forum shopping that has occurred here.  Kristen chose to relocate to Texas and
although, regrettably, she did not wish to remain, she cannot bootstrap her
relocation to a Atemporary
absence@ from
Massachusetts by skipping town with the child in direct violation of a court
order.  Consequently, neither Texas nor
Massachusetts had home state jurisdiction. 









Kristen
argues that Massachusetts has already determined it has home state status and
has expressed its intent to exercise jurisdiction.  By letter dated August 15, 2000, a judge of
the Probate and Family Court Department, Norfolk Division, advised the associate
judge below as follows:

Given
the facts set forth in Ms. Fox=s
Affidavit, which in pertinent part are essentially undisputed, it would appear
that Massachusetts and not Texas is the child=s
home state under the UCCJA. 
Massachusetts was the child=s
home state within six months of the date(s) upon which the actions were filed
in each court.  It would, therefore,
appear that the fact that the mother and child resided briefly in Texas
(June-July 2000) would not confer subject matter jurisdiction in Texas.  Moreover, the child was born in
Massachusetts, and mother and the child currently reside in, and have
significant lifelong connections to, Massachusetts.

 

After
reviewing the enclosed, and your, [sic] file, I respectfully submit that for
the reasons set forth above, you decline to take further action and dismiss the
action pending before you in order that any question of subject matter jurisdiction
can be put to rest.  

 

Without
question, the Texas proceeding was filed first, and it was filed at a time when
all parties resided in Texas.  Thus, the
provisions of Section 152.206(a) are inapplicable.  Tex.Fam.Code
Ann. '
152.206(a)(a court of this state may not exercise its
jurisdiction under the UCCJEA if, at the time of the commencement of the
proceeding, a proceeding concerning the custody of the child has been commenced
in a court of another state).  Nor can we
conclude that Section 152.206(b) applies (if a Texas court determines that a
child custody proceeding has been commenced in another state having
jurisdiction substantially in accordance with the Act, the Texas court shall
stay its proceeding and communicate with the court of the other state; if the
court of the state having jurisdiction substantially in accordance with this
chapter does not determine that the Texas court is a more appropriate forum,
the Texas court shall dismiss the proceeding). 
As we have detailed, Massachusetts was not Kaylee=s home state.








We
must next consider whether it was appropriate for Texas to exercise
jurisdiction on the basis of significant connections.  This necessitates a showing by Regi that (1) the child has no home state or the home state
has declined to exercise jurisdiction; (2) it is in the best interest of the
child because the child and at least one of its parents have a significant
connection with Texas beyond mere physical presence; and (3) there is available
in Texas substantial evidence concerning the child=s
present or future care, protection, training, and personal relationships.  Tex.Fam.Code
Ann. '
152.201(a)(2).

Significant
Connections

At
the hearing, Regi and his father testified concerning
Kaylee=s
connections to Texas.  Bruce Brilliant
testified that he has lived in El Paso since 1975 and is employed with United
States Customs.  He has seven other
children besides Regi, five of whom still live at
home.  These four girls and one boy range
from two to eleven years of age.  The
extended family saw Kaylee on a frequent basis and
the children would play together.  His
home featured Aa great
big play room and there=s
nothing but toys.@  Kaylee had a place
in their family and A[s]he
loved it there.@  He also explained Regi=s and Kristen=s
plans to raise their family in Texas:

[T]hey
were going to go ahead and go get a house. 
As a matter of fact, I had the ticket to bring her down here.  And after that, she was going to get a job.  And my wife even said I=ll go over,
pick up the baby, take you to work, bring the baby to the house and the baby
can play with the kids all day long.  

 

Q:  Was that acceptable to Kristen?

 

A:  Yes.  

 








As
the father of eight children, he had helped Kristen with child care, teaching
her that she could not mix the formula with plain tap water,
that she needed to sterilize the bottles, boil the water and the
nipples.  He had warned her that if she
preferred to use the microwave, she should not put the nipples in it.  

Regi testified that Kaylee=s medical records were transferred to
Texas and that the child was behind in her immunizations.  He brought her current Aexcept for the TB.  She had an appointment for the 14th, but she wasn=t
here.@  The Social Security Administration was
advised that Kaylee=s
residence was in Texas.

As
we have noted, Kristen did not appear at the hearing so the record contains
only the affidavit attached to her plea to the jurisdiction.  In it, she claimed that Regi
obtained the temporary restraining order by making fraudulent representations
to the court.  She also alleged that he
had made misrepresentations to her concerning Alife
in his home state of Texas.@  The affidavit does not specify what those
misrepresentations were, nor did Kristen offer evidence to establish any.  With regard to significant connections, she
made the following statements without elaboration:

$ 
I have lived in Quincy, Massachusetts all of my life and was living in
Quincy when I met Reginald Brilliant.

 

.          .          .

 

$ 
I was 17 years old when I became pregnant and was living at home with my
mother in Quincy, Massachusetts.

 

$ 
When I was six months pregnant, Reginald Brilliant and I moved in
together.

 

$ 
We lived together at 81 Island Street, Marshfield, Massachusetts for
approximately one year and four months.

 

.          .          .

 

$ 
I always had reservations about making such a drastic move with my young
baby as I had always been extremely close to my mother; and my ties in
Massachusetts, where I had lived all of my life, were very strong.

 

.          .          .

 








$ 
I intend to stay in the Commonwealth of Massachusetts permanently.

 

$ 
I have been the sole caretaker of my daughter, Kaylee,
since her birth.

 

$ 
Kaylee has become extremely attached to my
mother, Lynn Fox, with whom we both live. 

 

Kaylee lived with both of her parents from the time of her
birth until April 15, 2000 and again from June 12, 2000 until July 24,
2000.  She lived with her mother and her
maternal grandmother from mid-April until June 12, 2000.[7]  Lynn Fox did not testify in person or by
affidavit.  There was no evidence
presented concerning the environment in Massachusetts, other than that Kaylee=s
medical care had been neglected. 
Certainly, evidence of Kaylee=s connections to Massachusetts could
have been presented but Kristen, electing not to appear, offered nothing more
than conclusory comments about her attachments to
Massachusetts and her mother, and Kaylee=s attachment to her grandmother.  We are disinclined to accord much weight to
attachments Kaylee may have developed in the months
following her return to Massachusetts in July 2000 when the move was in
complete and utter disregard of a court order. 
Moreover, jurisdiction is determined based upon the existing
circumstances at the time suit is filed in Texas.  We thus conclude that it was in Kaylee=s
best interest for Texas to assume jurisdiction because she and her father had a
significant connection to Texas other than mere physical presence, and, based
on the record before us, Texas was a repository of substantial evidence
concerning her present or future care, training, and personal relationships.

Consequently,
Texas was authorized to exercise its jurisdiction based on significant
connections.  Kristen=s first issue for review is overruled.








DEFAULT JUDGMENT

On
the day after the trial court denied the motion for new trial, Regi and his attorney appeared and obtained a default
judgment which appointed Regi as the sole managing
conservator of Kaylee.  Kristen contends that she had entered an Aappearance@
such that she was entitled to notice of the hearing.  Regi urges us to
construe the trial court=s
order as a judgment nihil dicit.

 The Supreme Court has discussed three types of
default judgments that contrast to Aa
judgment upon trial.@  Stoner v. Thompson,
578 S.W.2d 679, 682 (Tex. 1979). 
The first is the traditional no‑answer default.  Second is the judgment nihil
dicit, which occurs when a defendant has (1)
entered some plea, usually of a dilatory nature, but one which does not place
the merits of the plaintiff=s
case in issue; or (2) withdrawn his answer. 
Frymire Engineering Co. v. Grantham,
524 S.W.2d 680, 681 (Tex. 1975)(per curiam).  A no‑answer
default and a judgment nihil dicit
are so similar that the same rules apply to each with respect to the effect and
validity of the judgment.  See Stoner,
578 S.W.2d at 682.

A
judgment nihil dicit
is proper when a party appears but has filed no answer on the merits.  O=Quinn
v. Tate, 187 S.W.2d 241, 245 (Tex.Civ.App.--Texarkana
1945, no writ).  It is stronger than a no‑answer
default in that a judgment nihil dicit acts as a confession of judgment.  Gomperts v. Wendeborn, 427 S.W.2d 904, 905
(Tex.Civ.App.--Austin 1968, no writ).  These two types of judgments contrast with a
post‑answer default judgment, in which an answer is on file but the
defendant fails to appear at trial.  The
difference is that a post‑answer default constitutes neither an
abandonment of the answer nor an implied confession of any issues joined by the
answer.  A judgment cannot be entered on
the pleadings; the plaintiff must offer evidence and prove his case as in a
judgment upon a trial.  See Stoner,
578 S.W.2d at 682.








At
oral argument, Regi conceded that none of the cases
involving judgments nihil dicit to which he has directed our attention involved a
suit affecting the parent-child relationship in which the trial court was
charged with determining a child=s
best interest.  Moreover, none of the
cases which he cites addresses whether a judgment nihil
dicit may be taken without notice.  Even the Texas Quarries case, which Regi suggests is factually similar, reveals that a notice
of the trial setting was provided.  See Texas Quarries, Inc. v. Pierce, 244 S.W.2d 571, 572 (Tex.Civ.App.--San Antonio 1951, no writ).

An
original answer may consist of motions to transfer venue, pleas to the
jurisdiction, pleas in abatement, or any other dilatory pleas.  Tex.R.Civ.P. 85.  If a timely answer has been filed, or the
respondent has otherwise made an appearance in a contested case, she is
entitled to notice of the trial setting as a matter of due process.  Peralta v. Heights Medical Center, Inc.,
485 U.S. 80, 84‑86, 108 S.Ct. 896, 899, 99
L.Ed.2d 75 (1988);  Gonzalez
v. State, 832 S.W.2d 706, 707 (Tex.App.--Corpus
Christi 1992, no writ); Langdale v. Villamil, 813 S.W.2d 187, 190‑91 (Tex.App.--Houston [14th Dist.] 1991, no writ).  Even a pro se answer in the form of a
signed letter that identifies the parties, the case, and the defendant=s current address, constitutes a
sufficient appearance to require notice to that party of any subsequent
proceedings.  Smith
v. Lippmann, 826 S.W.2d 137, 138 (Tex. 1992).









Kristen=s plea to the jurisdiction constituted
an appearance.  Martinec v. Maneri, 494 S.W.2d 954, 955 (Tex.Civ.App.--San
Antonio 1973, no writ).  When a
party has appeared, she is entitled to notice of trial pursuant to Rule
245.  Blanco v. Bolanos, 20 S.W.3d 809, 811 (Tex.App.--El
Paso 2000); Turner v. Ward, 910 S.W.2d 500, 505 (Tex.App.--El
Paso 1994, no writ).  The rule
provides that the A[c]ourt may set contested cases on written request of any party
. . . with reasonable notice of not less than forty‑five days to the
parties of a first setting for trial . . . .@  Tex.R.Civ.P. 245.  A trial court=s
failure to comply with the rules of notice in a contested case deprives a party
of the constitutional right to be present at the hearing, to voice her
objections in an appropriate manner, and results in a violation of fundamental
due process.  Platt
v. Platt, 991 S.W.2d 481, 483 (Tex.App.--Tyler
1999, no pet.).  Thus, if the
respondent does not have notice of the trial setting as required by Rule 245,
the default judgment should be set aside because it is ineffectual.  Id. at 484.  We
sustain the second issue for review.  The
judgment is reversed and remanded for trial on the merits.

 

June
20, 2002

                                                                         


ANN
CRAWFORD McCLURE, Justice

 

Before
Panel No. 2

Barajas,
C.J., McClure, and Chew, JJ.

 

(Publish)











[1]  APKPA@ is the acronym for the Parental Kidnaping
Prevention Act of 1980, 28 U.S.C.A. ' 1738A
(West 2002).  Although the PKPA
prioritized Ahome state@
jurisdiction, the former UCCJA as adopted by the National Conference of
Commissioners on Uniform State Law authorized four independent jurisdictional
bases without prioritization.  The Texas
version of the former Act prioritized home state jurisdiction.  See former Tex.Fam.Code Ann. ' 152.003 (Vernon 1996).





[2]  One court has
concluded that the Adate of commencement of the proceeding@ means the date of commencement of a proceeding in a
Texas court.  In re McCoy, 52
S.W.2d 297, 306 (Tex.App.--Corpus Christi 2001, orig.
proceeding).





[3]  She later
testified that since she had heard nothing further from the court concerning
the motion to modify, she thought it was over and she was allowed to take the
child.





[4]  Lynette
claimed the hearing was unscheduled and occurred without notice to her.  Consequently, she did not appear.





[5]  The UCCJA
provided for international application if reasonable notice and opportunity to
be heard were given to all affected parties. 
See former Tex.Fam.Code Ann. ' 11.73, recodified at '
152.023.  This concept is carried forward
in the UCCJEA.  See Tex.Fam.Code Ann. ' 152.105(a).





[6]  In effect,
this case presents the reverse of the scenario envisioned by Section 152.208
which, generally speaking, requires a court to decline jurisdiction when the
court has acquired jurisdiction under the UCCJEA because a person seeking to
invoke its jurisdiction has engaged in unjustifiable conduct.  See Tex.Fam.Code Ann. ' 152.208(a).  Here,
Kristen attempted to avoid jurisdiction in Texas by fleeing the state after
being served with a restraining order.





[7]  Although she
was again living with her mother and maternal grandmother from July 24 forward,
we determine jurisdiction based upon the circumstances as they existed on the
date suit was filed.